# Wytheville.

## WILSON, TRUSTEE, v. LANGHORNE & OTHERS.

### JUNE 16, 1904.

1. DEEDS—*Description*—*"Property of Every Description"*—*Contingent Remainders.*—Between the parties thereto, a deed from an insolvent debtor, containing a release clause, which conveys certain enumerated property, and "also any and all other property of every description" of the grantor, embraces and conveys a remainder in property contingent upon the grantor's surviving his mother.

2. DEEDS—*Construction*—*Language*—*Against Grantor.*—The intention of a grantor in a deed is to be gathered from the language used, and this language, in case of doubt, is to be taken most strongly against the grantor. A grantor must be considered as having intended to convey all that the language he has employed is capable of passing to his grantee.

3. CONTINGENT REMAINDERS—*How Transferred.*—At common law a contingent remainder, especially where the contingency depended upon the uncertainty as to the person who was to take, passed only by estoppel, but under the provisions of section 2418 of the Code any interest in, or claim to, real estate may be transferred by deed or will.

4. TRUSTS AND TRUSTEES—*Advancements by Trustee*—*Lack of Authority.*—Where a will creating a trust estate does not authorize the trustee to make advancements, a mere loan by him to a contingent remainderman under the trust cannot operate *ex proprio vigore* as a lien or charge upon the particular interest.

5. JUDGMENT—*Liens*—*Vested Remainders.*—Under the provision of section 3567 of the Code a judgment is a lien on an after acquired vested remainder in possession.

Appeal from a decree of the Corporation Court of the city of Lynchburg, in a suit in chancery, wherein three of the appellees

mentioned in the opinion were the complainants, and the appellants and others were the defendants.

*Reversed.*

The opinion states the case.

*F. W. Whitaker* and *J. Singleton Diggs,* for the appellant.

*Caskie & Coleman, Horsley & Blackford, Harrison & Long, John H.* and *L. D. Lewis* and *Kirkpatrick & Howard,* for the appellees.

KEITH, P., delivered the opinion of the court.

H. S. Langhorne, George W. Langhorne, Jr., and Anna T. Curville presented their bill to the Corporation Court of the city of Lynchburg, in which they show that one Anderson H. Armistead devised to George W. Langhorne, Sr., as special trustee, certain real estate situated in the city of Lynchburg and in the counties of Campbell and Appomattox, upon the following trusts:

"All the rents, profits and issues to be held by the said George W. Langhorne in special trust for the sole and separate use of my daughter, Nannie M. Langhorne, during her lifetime, and at her death the same shall be the property of her children surviving her or their descendants, if any have died before her leaving descendants, equally to be divided, the descendants of any such deceased child, however, to take only what the parent would if living; and in case my daughter shall survive all her children and their descendants, then at her death I give the said property to my son, J. A. Armistead, for his life, and at his death to his children surviving him." Authority was given to the trustee, when Nannie M. Langhorne should so direct in writing, to sell all or any of the trust property on reasonable time and reinvest the proceeds in other property, "such other pro-

perty to be held to the same use and purpose above set forth and
no other."

It appears that Nannie M. Langhorne was twice married, that
Anna T. Curville and A. A. Langhorne (who is named as a de-
fendant) were the children of her first marriage, and H. S.
Langhorne, George W. Langhorne, Jr., and Alice S. Langhorne
were the children of her second marriage; George W. Langhorne,
the trustee, being her second husband, and the brother of her first
husband. George W. Langhorne, the trustee, loaned to A. Ar-
mistead Langhorne a portion of the trust estate, as evidenced
by bonds, the first of which bears date September 23, 1884,
payable five years after date, with interest, for $500; the
second dated May 15, 1889, payable five years after date, with
interest, for $2,075; the third dated July 15, 1891, payable
three years after date, with interest, for $2,135; and a fourth
dated November 14, 1894, payable twelve months after date,
with interest, for $150. These bonds are now in the possession
of the trustee, and no part of them has been paid. Anna T.
Curville is the surety in the bond dated May 15, 1889.

It further appears that on the 13th of June, 1892, A. A.
Langhorne, together with one R. A. Dirom, then partners trad-
ing as A. A. Langhorne & Co., conveyed to certain creditors
all of their social assets, and "also any and all other property of
every description, to the said firm or either member thereof be-
longing."

Nannie M. Langhorne died in May, 1902. All necessary
parties are made to the bill, which concludes with a prayer for
the settlement of all proper accounts, and that the trust estate
may be partitioned in kind, or by sale and division of the pro-
ceeds, among those entitled thereto, and that A. Armistead
Langhorne may be charged with the bonds and interest due by
him. William V. Wilson, Jr., trustee in the deed from Lang-
horne & Co., filed his answer at the October term, 1902, in
which he insists that it was the intention of A. A. Langhorne

to convey to him, for the benefit of his creditors, everything which he owned at the time the deed was executed. He, therefore, prays that the deed of assignment of June 13, 1892, "be decreed to be in full force and effect, and binding upon the interest of the said A. A. Langhorne in said estate, and that his said interest be subjected to the payment of the debts secured in said deed of assignment."

The controversy in this case arises over the disposition of the interest of A. A. Langhorne in the property bequeathed by A. H. Armistead to a trustee, for Nannie M. Langhorne during her lifetime, and at her death to her children surviving her, or their descendants. As it could not be known until her death which of her children would survive her, they took contingent remainders which became vested, upon the death of Nannie M. Langhorne, in such of her children as were then living. *Howbert* v. *Cauthorne,* 100 Va. 649, 42 S. E. 683. Upon this point there is no dispute. A. A. Langhorne took a contingent interest by the will of his grandfather, which, upon the death of his mother, became a vested estate.

Upon the part of appellants it is contended that this interest is subject to the deed made by Langhorne & Co. in June, 1892, and which is filed as an exhibit with the bill. Upon the part of appellees it is claimed that the interest of A. A. Langhorne did not pass under the deed, first, because it does not appear from the language of the deed that it was the intention of the parties to convey this interest to the trustee; second, that a contingent interest cannot pass save by estoppel, and as there was no clause of general warranty in the deed no estoppel was created; and, third, that the money loaned by the trustee at various times to A. A. Langhorne constituted advancements out of the trust fund, which constitute charges upon his interest, for which he must account before he, or those claiming under him as purchasers or as judgment creditors, can participate in the fund.

The Corporation Court was of opinion, and so decreed, that the deed in question "does not embrace and was not intended to embrace, carry, or in any way affect A. A. Langhorne's contingent remainder in the property devised under the will of Anderson H. Armistead, deceased," but held that it was bound by the judgments obtained by certain of his creditors, and that what remained of his share should be paid in equal parts to George W. Langhorne, Jr., Anna T. Curville, Alice S. Langhorne, and G. H. Wilkins. From this decree W. V. Wilson, trustee in the deed of June 13, 1892, and Maria Dirom, one of the beneficiaries under said deed, obtained an appeal, and certain of the appellees assign as cross-error the provisions of the decree which direct payments to be made out of the trust fund to certain judgment creditors of A. A. Langhorne.

In construing the deed of June 13, 1892, it is well to bear in mind that it was made by a debtor in failing circumstances, for the benefit of all his creditors, and undertakes to place at their disposition all of the debtor's property. The declarations of trust in the deed are: First, to secure the payment of all rent due by the firm, all clerk hire unpaid, and the cost of recording and executing the trust; second, "to secure the payment, *pro rata,* of so many of the following creditors, which are believed to be all the creditors of the parties of the first part, as shall, within sixty days from the date of this deed, file with the trustee a written acceptance of their *pro rata* share hereunder in full of their claims against the said firm of A. A. Langhorne & Co." Then follows a long list of debts, ranging in amount from one of less than $5.00 to that secured to Mrs. Dirom of more than $1,000. The third class, under the deed, was to consist of those of his creditors who declined to accept the provisions of the deed and give a full discharge of all their claims as the price of participating in the benefits of the deed, and "any other debts due by the said parties of the first part, or either of them," which by chance might have been omitted from the careful enumeration of debts given in the deed.

A requisite of a deed from a failing debtor which requires a release from his creditors is that it shall convey the whole of his property, and this deed should be construed in the light of that rule. Apart from this, however, the language of the deed is comprehensive in its terms. In the preceding part of the granting clause, all the social assets had been conveyed, nothing of the slightest value seems to have been omitted, and then, doubtless having in view the intention to require their creditors to give a full acquittance of all their claims as the condition of sharing in the benefits of the assignment, the sentence under consideration was added—"also any and all other property of every description, to the said firm or either member thereof belonging." Language could not be more comprehensive, and it is a settled rule of construction which does not need to be buttressed by authorities, that force and effect must be given, if possible, to every word in a written instrument.

In *Mundy* v. *Vawter,* 3 Gratt. 518, similar language is construed, and it was held that, as between the parties, a conveyance of "all the estate, both real and personal, to which the grantor is entitled in law or in equity, in possession, remainder or reversion" is valid to pass the grantor's whole estate.

In *Vanmeter* v. *Vanmeter,* 3 Gratt. 148, it was held that a conveyance of all of the lands of the grantor in the county of H was sufficient.

In *Carrington* v. *Goddin,* 13 Gratt. 609, both of these cases are cited with approval.

In *Feckheimer* v. *Nat. Bank,* 79 Va. 80, a conveyance by deed of all of grantor's "property, real and personal," was held to embrace shares of bank stock. See also *Bullitt* v. *Bank,* 18 Wallace 589, 21 L. Ed. 923.

In *Lewis's Adm'r* v. *Glenn, Trustee,* 84 Va., at p. 964, 6 S. E. 865, construing a trust deed to secure the payment of grantor's debts, the court said: "It is evident from the financially embarrassed condition of the company, and from the face of the

deed itself, that its general and leading object in making the deed was to dedicate all of its assets and effects of every kind to the payment of its debts." Then follows an enumeration of the property conveyed, which concluded as follows: "But the omission of any property, money, or other thing, from such schedule is not to prevent the same from being hereby granted or as- ·signed," and it was held that it manifested a clear intent of the grantor "to convey all of its estate, rights, and credits of every kind, including its uncalled subscriptions, in trust for the payment of its debts. Such was unquestionably the company's intention in executing the deed." The language employed in the deed is apt and sufficient to pass everything the company owned, and clearly embraced the "uncalled and unpaid subscriptions in the hands of its stockholders." Citing *Mundy* v. *Vawter, supra,* and other cases.

The intention of the grantor must be gathered from the language he has seen fit to employ. If there be a doubt upon the construction of the deed, it is to be construed most strongly against the grantor—another rule of construction which is well established. Looking, therefore, to the language employed, in the light of the authorities cited, we reach the conclusion that A. A. Langhorne must be considered as having intended to convey all that the language which he employed was capable of passing to his grantee.

We are here called upon to consider, it may be well to observe, the effect of the language only as between the grantor and the grantee. Counsel for Mrs. Curville, it is true, endeavor to place her in the position of a purchaser for value and without notice, but the deed under which she claims bears date the 19th of January, 1903, while the bill in which she is named as a party plaintiff was filed some months before that date, and the answer of Wilson, trustee, which specifically states his claim, was filed at the October term, 1902.

At common law "a vested remainder lying in grant passes by

deed without delivery. But a contingent remainder is a mere right and cannot be transferred before the contingency, otherwise than by estoppel." Lomax's Dig., Vol. I, p. 602.

In Preston on Estates, at p. 75-6, it is said: "A contingent interest does not give any certain nor any immediate right, or any estate, in the land. It gives a mere possibility. A possibility which is coupled with an interest when the person is fixed and ascertained, and such possibility, coupled with an interest, is devisible by will, may be released, may pass by the bargain and sale of commissioners of bankrupt, may be bound or extinguished by estoppel, but it cannot be granted or transferred by the ordinary rules of the common law, though it may be bound in equity by contract."

In *Doe* v. *Oliver,* 10 Barn. & Cress. 181, 21 Eng. Com. Law Rep. 50, testator devised lands to his wife for life, remainder to all the children of his brother that should be living at the time of his wife's decease. His brother left one daughter, who married and afterwards with her husband, during the life of the testator's widow, levied a fine *come ceo* of the lands, and declared the use to A. B. After the death of the widow, A. B. brought ejectment against the tenant in possession: Held, that it was maintainable; for that although the brother's daughter had only a contingent remainder during the life of the widow, and the fine could operate only by estoppel until the contingency happened, yet afterwards it operated on the estate.

It would seem from these authorities that at common law a contingent remainder, especially where the contingency depended upon uncertainty as to the person, passed only by estoppel; and here it is conceded there was no estoppel.

This brings us to the consideration of section 2418 of the Code of Virginia.

"Any interest in or claim to real estate may be disposed of by deed or will. Any estate may be made to commence *in futuro,* by deed, in like manner as by will; and any estate which

would be good as an executory devise or bequest, shall be good if created by deed."

This section stands now as it appears in the Code of 1849, and treating of it in *Carrington* v. *Goddin, supra,* Judge Moncure, speaking for the court, says: "It is very clear that before the Code took effect, a bargainee of a party not in possession, actual or constructive, at the time of the execution of the deed, could not maintain ejectment in his own name, at least against the party at that time in the adverse possession of the land. His disability to maintain the action proceeded, not from the act against conveying or taking pretensed titles, 1 Rev. Code 375, but from the common law, whose maxim it was that nothing in action or entry could be granted over. A feoffment was void without livery of seisin; and without possession there could be no livery of seisin. 4 Kent Com. 448, 2 Lom. Dig. 8, 9. The statute of uses, 1 Rev. Code 370, sec. 29, did not remove the disability, because it only operated on a possession existing in the bargainor at the time of the execution of the deed, and trans- ferred that possession to the use created or declared in favor of the bargainee. If no possession existed in the bargainor, of course none could be transferred to the bargainee. But the Code has changed the common law rule by declaring that "an in- terest in or claim to real estate may be disposed of by deed or will." Ch. 116, sec. 5, p. 500. That such a change was con- templated by the revisors, is manifest from their report, p. 602, sec. 5, and note. They recommended the adoption of a section similar to 8 and 9 Vict., ch. 106, sec. 6, in which 'a right of entry' is expressly named. Instead of adopting that section, which is complicated in its details, the Legislature enacted the provision before quoted. Their object was to use brief and plain terms, which would be at least as extensive in their mean- ing as the terms used in the statute of Victoria. They could not have used more comprehensive terms than they did. A right of entry is certainly 'an interest in or claim to real estate,' and may therefore 'be disposed of by deed or will.' "

The court in that case indulges in no refinement of construction. It is content to give to plain words their usual and everyday meaning, and the interpretation there placed upon the statute did away forever with the niceties by which the devolution of property had theretofore been embarrassed and hindered, and made capable of disposition by deed or will any interest in or claim to real estate.

2 Minor's Institutes (3d Ed.), p. 416, states the law as follows: "As to conveyances *inter vivos,* while vested remainders lying in grant, as they do, pass by deed without livery, a contingent remainder is a *mere right,* and except in equity, cannot at common law be transferred before the contingency, otherwise than *by estoppel,* as by matter of record, or of deed indented. This matter, however, is assisted in Virginia by statute, which provides that *any interest in or claim to* real estate may be disposed of *by deed or will.*"

*Young* v. *Young,* 89 Va. 675, is to the same effect. It was there held that a contingent remainder being a mere possibility was not the subject of attachment, but that being an interest in or claim to real estate may be conveyed under section 2418.

In *Nutter* v. *Russell,* 3 Metcalfe (Ky.) 163, dealing with the power of court to sell a contingent remainder, the following language is used: "In the case cited, of *Jackson* v. *Waldron,* 13 Wendell, 178, a majority of the court decided that an interest, such as we have been considering, created by will, was a *naked* possibility, as it is called, and not assignable or releasable.

"It is sufficient to say, in reply to the argument founded on this decision, that we are inclined to concur with the chancellor in the reasoning as well as in the conclusion announced in his dissenting opinion. But it is unnecessary to decide the point upon the general principles discussed by the court in the several opinions delivered in that case; for, according to our own statutes, 'any interest in, or claim to, real estate, may be disposed of by deed or will in writing. Any estate may be made to com-

mence in *futuro,* by deed in like manner as by will, and any *estate* which would be good as an *executory devise* or bequest shall be good if created by deed.' "

It will be observed that the statute there construed is in substance identical with section 2418 of our Code.

It will be remembered that when the bill was filed in this case the life tenant was dead, and A. A. Langhorne, having survived her, had a vested estate. We are of opinion that it passed under the deed of June 13, 1892, to Wilson, trustee. It may be well to remark that *Howbert* v. *Cauthorne, supra,* did not decide that a contingent remainder would not pass by deed or will, but that a court of chancery, in its discretion, would not sell so unsubstantial and shadowy an interest.

We come now to the last contention made by the appellees, which is, that the money loaned by the trustee at various times to A. A. Langhorne constituted advancements out of the trust fund, which constitute charges upon his interest, for which he must account before he, or those claiming under him as purchasers or as judgment creditors, can participate in the fund.

The will which creates the fund in this case did not authorize the trustee to make loans or "advancements" to the remaindermen, and if the trustee saw fit to do so, the mere lending of the money created no charge upon the fund. The trustee seems to have understood and acted upon this view in the first instance. He knew, of course, that if A. A. Langhorne died before his mother his interest perished, and to guard against this contingency policies of insurance were taken out upon the life of A. A. Langhorne; but these policies were permitted to lapse. Had advancements been authorized by the will, they must have been brought into hotchpot, or if a lien had been taken to secure the loan, it would have brought the case within the influence of *Grove* v. *Grove,* 100 Va. 556, 42 S. E. 312, in which Judge Whittle delivered the opinion, holding that one tenant who discharges a lien on the common property or pays more than his

share of the purchase price is entitled to ratable contribution from the co-tenants. But it cannot be contended that a mere loan of money to A. A. Langhorne, where the trustee acted under a will which did not authorize him to make advancements, could operate *ex proprio vigore* as a lien or charge upon the particular interest.

The cross-error assigned by the appellees is, in view of the conclusion reached upon the other questions considered, of little moment. There was, however, in this respect, no error in the decree to the prejudice of appellees. Without determining whether or not a judgment binds a contingent remainder while the contingency continues, the judgment in this case became effective to bind the interest of A. A. Langhorne as soon as that interest vested, for section 3567 declares that "every judgment for money rendered in this State, heretofore or hereafter, against any person, shall be a lien on all the real estate of or to which such person is or becomes possessed or entitled, at or after the date of such judgment."

Upon the whole case we are of opinion that the debt secured by the deed from A. A. Langhorne to Wilson, trustee, constituted the first lien upon the interest of A. A. Langhorne, under the will of A. H. Armistead. The decree of the Corporation Court must, therefore, be reversed.

*Reversed.*