## Wytheville

# BRIDGEWATER MILLING CORPORATION OF FREDERICKSBURG V. FREDERICKSBURG POWER COMPANY, INC.

### June 11, 1914.

1. WATERS AND WATER COURSES—*Conveyance of Water Rights— Height of Dam—Case at Bar.*—Where a party contracts to convey to another all the rights of water power to which he is entitled as riparian owner, and five years thereafter by deed, reciting that the dam had been erected across the stream with a view to the application of the whole water power afforded by said stream, conveys to the grantee in pursuance of said contract, all the rights of water power to which he is entitled in said stream, and there is no limitation either in said contract or deed upon the height of the contemplated dam or upon the manner of its construction, the grantee is not bound for all future time to restrict the height of the dam to what it was at the time the deed was made by a provision at the close of the deed that the "grantor, his heirs and assigns, shall be entitled to receive his proportion of any water which at any time hereafter, passing the dam of the said company, may be caught by the aforesaid dam."

2. DEEDS—*Construction—Surrounding Circumstances—Contracts.*— In construing written instruments regard must be had to the situation of the parties, the subject matter of the agreement, and the object which the parties had in view at the time, and intended to accomplish. Furthermore, the intention of the parties must be gathered from the language used, and in case of doubt as to the meaning of language used in a deed it must be taken most strongly against the grantor.

3. DEEDS—*Contracts—Practical Construction.*—If the language of a deed is doubtful, the long continued interpretation placed upon it by the parties thereto will be conclusive.

Appeal from a decree of the Circuit Court of Spottsylvania county. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*A. L. Holladay* and *Meredith & Cocke,* for the appellant.

*Munford, Hunton, Williams & Anderson* and *A. T. Embrey,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the Bridgewater Milling Corporation of Fredericksburg for the purpose of enjoining the Fredericksburg Power Company, Inc., from erecting in the Rappahannock river, above the lands of the complainant, a dam more than eighteen feet high, and further to require the defendant to repair and keep in proper condition the bank of a certain canal through which the complainant was furnished with water power for its mills.

The injunction prayed for was refused, and more than three years thereafter the cause was heard upon its merits, resulting in a final decree in favor of. the defendant from which this appeal has been taken by the complainant.

This litigation has developed into a record of more than nine hundred printed pages, but in our view of the case the controversy is controlled and to be determined by the proper interpretation and construction of certain written memorials between the predecessors in title of the present litigants.

It appears that in 1851 certain citizens of Fredericksburg owned all of the water power of the Rappahannock river which was appurtenant to several mill sites in and near Falmouth in Stafford county, and subject to use on the Falmouth side of the river; and that Joseph B. Fick-

len and Thomas F. Knox owned the water power on the Spotsylvania or southern side of the river above Fredericksburg. The record shows that at this time the ownership of water power between Knox and Ficklen was clearly defined. The parties owning the water power on the Falmouth side of the river in Stafford county desiring to form a manufacturing company and to concentrate the entire water power of the river for the purpose of applying the same to manufacturing or other uses on the Spotsylvania side, or to selling the same to be so applied, bought from Thomas F. Knox and Joseph B. Ficklen all the rights of water power owned by them on the south side of the river, the venders agreeing to grant the same under certain limitations. This contract, dated April 15, 1851, was reduced to writing and signed by the parties and the following year the proposed company was duly incorporated under the name of the Fredericksburg Water Power Company. This act of incorporation was amended (Acts 1853-4, p. 89) by which the company was given power to erect a dam adequate for the uses of the company across the river at such point as might be convenient. The company acquired the rights of the old canal company and certain lands in Fredericksburg, and between Fredericksburg and the old dam of the canal company, and built its dam across the river. These preparations for commencing the development of its enterprise of concentrating the entire water power of the river on the south side thereof being completed, the company proceeded to secure a deed, in accordance with the contract mentioned of April 15, 1851. This deed was executed on the 25th of October, 1856, by Ficklen and wife, without Knox, who is not a party to this suit and not complaining. The complainant, through several conveyances, is the successor in title to Joseph B. Ficklen, and the defendant through several

conveyances, is the successor in title to the Water Power Company, and both are corporations duly chartered. The old dam, which was erected by the water company in the early fifties, was eighteen feet high. The new dam, built by the defendant power company, is fifty feet below the old dam, twenty feet high, and abuts at each end upon the lands of the defendant. The complainant owns land only on the southern side of the river, extending from its mills up the river to a point between one-half and three-fourths of a mile below the defendant's dam.

The only cause of complaint involved in the first branch of the case is that the defendant has built its new dam two feet higher than the old dam, the contention being that this is injurious to the complainant and in contravention of its rights.

Whether or not the additional two feet to the height of the dam operates to the prejudice of the complainant is not very clear, and is not material; the question to be determined being the legal right of the defendant company to build its present dam two feet higher than the old dam.

Recurring to the contract of April, 1851, it is apparent that it was the purpose of the parties thereto to concentrate the entire water power of the Rappahannock river on the south side thereof for the purpose of applying the same to manufacturing and other uses, and to selling the same to be so applied, and that this purpose was well known to Knox and Ficklen. This contract was followed by the deed of October, 1856, between Joseph B. Ficklen and wife and the Fredericksburg Water Power Company, which is the source of the complainant's title. In construing the deed it is to be observed in the outset that neither in the contract of 1851 nor in the deed of 1856 is there to be found any limitation whatsoever upon the height of the contemplated dam, or upon the manner

of its construction. The deed under consideration recites the fact that the water power company had then constructed a dam across the river, above the site of the old Falls Mill, ''with a view to the application on the Spotsylvania side, at or near the town of Fredericksburg, of the whole water power afforded by the said river.'' The grantor, J. B. Ficklen, then proceeds, in consideration of five thousand dollars and certain engagements and undertakings on the part of the company, to grant with general warranty of title unto the Fredericksburg Water Power Company all the rights of water power to which he was entitled on the Spotsylvania side of the river, below the dam of the company. Language could scarcely convey a more comprehensive meaning than that in the granting part of this deed. Ficklen thereby grants *all* the rights of water power that he had as a riparian owner, with nothing left, except the reservation of a certain measnre of water, defined by the deed, which was to be diverted by the company and sent to the Bridgewater mills through a canal provided for that purpose. At the close of the deed the following language is used: ''And that the said Joseph B. Ficklen, his heirs and assigns, shall be entitled to receive his proportion of any water which at any time hereafter, passing the dam of the said company, may be caught by the aforesaid dam, belonging to himself and Thomas F. Knox at the site of the old Falls Mills.''

It is insisted by the complainant that this clause gave Ficklen and his successors in title a right to the overflow from the defendant's dam, as it was when built in 1856 when the deed was executed; that it had reference to the height of the dam as it was then; that it was a reservation fixing the rights of the parties for all time and as binding as the grant. This contention could not be sustained even if our consideration was confined alone to

the language relied on; but when the deed is read as a whole, in the light of the contract and the manifest object had in view and intended to be accomplished, it is obvious that the language under consideration was never intended to limit the right of the defendant to raise its dam in the future to such height as might be necessary to accomplish the purposes of its enterprise. In 1856 the water company was in its infancy, and a dam eighteen feet high might well have been considered sufficient for the limited uses of the company at that time, but it could hardly have been expected to meet its necessities for all time. The purpose of the parties was to command the use of a water power to meet conditions as they arose. Otherwise, the development contemplated by the company could never have been accomplished. Ficklen the predecessor in title of the complainant, made ample provision both in the contract and the deed for a certain measured amount of water power—in fact he reserved more water power than the Bridgewater mills needed, for he sold years afterward two-fifths of such reservation to the company. In 1856 Ficklen knew that the enterprise of the company was hardly launched; that under authority of the legislature the company had power to build a dam adequate for its uses; that the purpose of those behind the enterprise was to concentrate the entire water power of the river for uses as they might arise in the future, and that there was little in Fredericksburg at that time in the way of manufactories, or anything else, to which the use of a water power could be applied. Under such circumstances it is not to be presumed, without a word in the written memorial between the parties to that effect, that J. B. Ficklen, or the legislature, or those composing the company ever contemplated that the dam once built could never be increased in height to meet changing conditions and in-

creasing patronage, or that it could not be made at any time adequate for the uses contemplated by the parties.

In construing written instruments regard must be had to the situation of the parties, the subject matter of the agreement, and the object which the parties had in view at the time and intended to accomplish. When these principles are supplemented by the further rule that the intention of parties to a deed must be gathered from the language used, and this language, in case of doubt, must be taken most strongly against the grantor, the conclusion cannot be avoided that the terms of the grant under consideration negative the idea that defendant company was compelled to keep its own dam, on its own land, eighteen feet high no matter how imperative the necessity for increasing the height might be. The language relied on by the complainant does not control or limit the height of the dam, nor does it control or limit the defendant's use of the water power, but it is itself controlled and limited by the use which the company may make of the water power for its purposes.

The second branch of the case involves the question as to whether the obligation to maintain the bank of the canal between Knox's mill and the Bridgewater mills is upon the complainant or upon the defendant power company.

Under the deed of 1856 the defendant was bound to furnish at its own expense to Joseph B. Ficklen, his heirs and assigns, at his mill site known as the Bridgewater Mills, a sufficient supply of water to run five pair of five foot burr stones. In 1870 Ficklen sold and conveyed to the defendant two-fifths of this power, so that thereafter the defendant had to furnish sufficient power to run only three pair of five foot burr stones. In 1874 Joseph B. Ficklen died and the mill passed to his two sons, Joseph B. Ficklen, Jr., and William F. Ficklen. The sons desiring to increase their water supply for a given

period, executed a deed, dated July 8, 1878, between themselves and the water power company by which it was determined that the measure of water to which their father was entitled was forty and one-half cubic feet per second, it being agreed that this amount should be increased by nine and one-half feet, thereby binding the company to furnish fifty cubic feet of water per second for a period of ten years, beginning October 1, 1877. By this deed the water power company agreed, among other things, to repair and put in thorough order the race leading from Knox's mill to the Bridgewater mills, and to raise the embankment of the same at the low places, so that it should in no place be less than fifteen inches above the new head of water in the race. The Messrs. Ficklen, of the Bridgewater mills, for themselves, their heirs and assigns, agreed among other things, "To keep in good order, at their cost and charges, the said race between said mills from and after the time when it shall have been put in thorough order as hereinbefore prescribed."

In view of this clear and explicit engagement on the part of the Ficklens, their heirs and assigns, to keep the race in question in good order, at their cost and charge from and after the time it was put in thorough order by the water power company, it is difficult to understand how there can be any dispute as to who the obligation rests upon to maintain the bank of such race or canal between Knox's mill and the Bridgewater mills.

There is neither charge nor evidence that prior to July 8, 1878, the water power company ever failed to perform its part of any of its covenants with Joseph B. Ficklen or with his two sons; and after a careful consideration of the voluminous record before us we are of opinion that the evidence satisfactorily shows that the defendant water power company has fairly performed every obligation assumed by it under the deed of 1878. More than thirty-two years have elapsed since the execution of that deed.

The record shows that during that time the properties of both the complainant and the defendant have passed through various hands, and have been owned and run by men of responsibility, character and judgment, all of whom, except William F. Ficklen, are now dead. It does not appear that any of the predecessors in title of the complainant ever questioned the performance by the defendant of its full contract obligations under the deed of 1878. It is not shown that J. B. Ficklen, Jr., who was president of the complainant company up to a short while before the institution of this suit, ever questioned the performance by the defendant of its obligations under such deed. On the contrary, it appears that for ten years prior to his death he had charge of the canal between Knox's mill and the Bridgewater mills, provided material for its repair and maintenance, had trees cut from its north bank, paid for its upkeep, and at the time of his death was having work done on the canal, which work was paid for by the complainant after his death. If the language of the deed of 1878 upon the subject was doubtful, this long continued interpretation placed upon it by the parties thereto would be conclusive of the question. The Ficklens would hardly have, for years, kept the canal in repair and paid for its upkeep after it had been put in thorough order by the defendant if they had not understood that to be their duty under the terms of their deed.

The defendant water company having kept and performed on its part the covenants of the deed of 1878, the obligation now rests upon the complainant, in the language of that deed, to keep in good order at its cost and charge the race or canal between Knox's mill and the Bridgewater mills.

Upon the whole case we find no error in the decree complained of and it is affirmed.

*Affirmed.*