## Richmond

W. O. Hamlin and Jeannette Hamlin v. J. J. Pandapas and W. P. Carver.

January 16, 1956.

Record No. 4438.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Bentley Hite* and *John B. Spiers*, for the appellants.

*W. Trigg Scott, Jr.* and *Marcus H. Long*, for the appellees.

SMITH, J., delivered the opinion of the court.

The appellees, J. J. Pandapas and W. P. Carver, instituted this proceeding under the declaratory judgments law, Code, § 8-578, against appellants, W. O. Hamlin and his wife, Jeannette Hamlin, seeking a determination of the location, width and nature of certain easements granted appellants' predecessor in title in and over their land, and also to enjoin certain alleged acts of trespass by appellants upon the land of appellee, J. J. Pandapas. The case was referred to a special commissioner whose report was, except in one particular hereinafter discussed, confirmed by the trial court. In its decree the court located and fixed the width and extent of a "passway" and "right of way" granted appellants, and enjoined them from continuing the several acts of trespass complained of, to which decree we granted an appeal.

H. E. and W. W. Argabrite in 1920 owned a parcel of land fronting 74 feet on Main street in the town of Blacksburg and extending back from the street in a southwesterly direction a distance of more than 150 feet at its most distant point. On January 29, 1920, the Argabrites conveyed to Dr. Joseph I. Gardner a parcel of this land described in the deed as follows:

"Beginning at the S. E. Corner of the building known as the office building on said lot and running S. W. with the line of said building projected 60 feet to a point; thence at right angles to said line 15 feet to a point; thence at right angles to the last line and parallel with the first line 15 feet to a point, and thence at right angles to the said line to a point in the line of the lot conveyed by J. L. Eakin and M. F. Slusser."

When this language of the deed is read in the light of the exhibits filed in the case, the lot conveyed to Dr. Gardner may be more definitely described as fronting 30 feet on Main street, and running back at right angles from its southeast corner on Main street (designated point A) in a southwesterly direction 60 feet to a point, B; thence at right angles in a northwesterly direction 15 feet to a point, C; thence at right angles in a southwesterly direction 15 feet to a point, D; thence at right angles in a northwesterly direction 15 feet to a point, E; thence at right angles running along the Eakin and Slusser property line in a northeasterly direction 75 feet to a point F on Main street and thence along Main street 30 feet to the point of beginning. The following sketch will serve to illustrate the situation.

At the time of the above conveyance a building covered the entire width of the lot for a distance of 40 feet from the street. The deed contains the following provisions:

"It is further a part of this deed that a passway of five feet in width along the southeastern side of said house or building shall be open for the common use of all parties to this deed. And further the parties of the first part doth grant unto the party of the second part a right of way for wagon or truck to the rear end of the lot hereby conveyed and the right of ingress and egress over the said right of way at any time. It is further agreed that the party of the second part may at any time brick case the said building on the southeast side without further charge by the parties of the first part, their heirs or assigns."

By a deed also containing these provisions, Dr. Gardner, on November 1, 1945, conveyed his lot to appellants. On December 30, 1952, appellees, through mesne conveyances, acquired in two separate deeds and in two distinct parcels the remaining portion of the land owned by the Argabrites. Appellee Pandapas acquired a ten foot frontage on Main street adjoining the southeast side of appellants' lot and also all of the Argabrite land in the rear of appellants' property. The remaining 34 foot frontage formerly owned by the Argabrites and extending from Main street a distance of 92.2 feet on its northwest side adjoining the Pandapas lot was acquired by appellee Carver.

Shortly after he acquired the property in 1920, appellants' predecessor in title, Dr. Gardner, remodeled and extended the building on the land the entire length and width of the lot. The building was then and is now occupied by a restaurant and barber shop on the ground floor and by apartments on the second floor. The rearmost part of the building is occupied by the kitchen of the restaurant. In addition to their construction and use of a door in the extreme southwest wall

of the kitchen that opens directly on the land of Pandapas, appellants maintain in this southwest wall an exhaust fan which blows smoke, odors and grease on and over Pandapas' land. Furthermore, at designated point C in the rear of their land, appellants have constructed on the land of Pandapas a stairwell four feet square which they are using for purposes of access to the basement of their building. Moreover, appellants have been placing soft drink containers, garbage and ash cans on the land of Pandapas that abuts the rear of their lot.

The commissioner reported that appellants were entitled to brick case the southeast side of their building, a distance of 60 feet from Main street, but the trial court reduced this distance to 40 feet from the street, the extent of the building on the land at the time of the 1920 conveyance to Dr. Gardner. In all other respects the report of the commissioner was confirmed by the trial court's final decree, which reads in part as follows:

"* * * [T]he right of way for wagon or truck and the five (5) foot passway acquired by the defendants and granted in the deed from W. W. Argabrite, et al, to J. I. Gardner dated January 29, 1920, of record in Deed Book 72, Page 262, be and the same is hereby merged and the right of way is hereby located along the southeast side of the building and with the line of said building projected a distance of sixty (60) feet from the southeast corner of the building on Main Street, and the width of the said right of way is determined to be ten (10) feet before the building is brick cased with the right reserved to the defendants to brick case the southeast side of the said building for a distance of forty (40) feet from Main Street, thus reducing the right of way to nine and one-half (9½) feet in width, where brick cased.

"It is, further, ADJUDGED, ORDERED and DECREED that the defendants, their lessees and employees, be and they hereby are perpetually enjoined and restrained from;

"1. Going beyond the end of the lot owned by them and placing garbage cans, ash cans, soft drink containers or otherwise interfering with the free and convenient use by the complainants, their successors and assigns, of the land owned by them and abutting the rear of the defendants building.

"2. Invading complainants premises by opening or using a stairway located in the rear of the building on the fifteen foot offset and opening on the complainants premises leading to the basement of the building owned by the defendants.

"3. Invading complainants premises by blowing smoke, odors and grease over the complainants premises by means of a fan located in the kitchen of the restaurant of defendants building.

"4. Invading complainants premises by using a doorway in the rear of defendants building as a means of ingress and egress."

No serious question is presented as to the validity of the injunction and, except insofar as it is herein modified, we find that it is clearly supported by the evidence. However, the parties disagree as to the proper interpretation and construction to be placed upon the language employed in the Argabrite-Gardner deed which, in addition to conveying the land, granted the following rights in the land retained by the Argabrites: (1) "a passway of five feet in width along the southeastern side of said house or building," (2) "a right of way for wagon or truck to the rear end of the lot hereby conveyed," and (3) the right to "brick case the said building on the southeast side without further charge."

Since appellees conceded at the bar of this court that appellants are entitled to brick case the southeast side of their building, a distance of 60 feet from Main street with a width of six inches, the issues primarily involved on this appeal are in locating and defining the "passway" and "right of way" created in the Argabrite-Gardner deed.

Appellants contend that they are entitled to a passway five feet in width along the southeast side of their building to the rear end of their lot, that is, from designated point A to D; and in addition to and adjoining the passway, a right of way of sufficient width to permit the free and unrestricted ingress and egress of trucks and wagons. Appellees, on the other hand, contend that the commissioner and trial court were correct in merging the five foot passway and the right of way for trucks and wagons into a single right of way nine and one half feet in width where the building is brick cased and ten feet where it is not, and extending along the southeast side of the building a distance of 60 feet from Main street, that is, from designated point A to B. Three questions are raised by these contentions of the parties: (1) Should the passway and right of way be merged? (2) What is the width of the right of way? (3) Does the right of way extend beyond the 60 foot southeast side of the building, and if so, to what point?

"Where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained

from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed." *Stephen Putney Shoe Co.* v. *Richmond, etc., R. Co.*, 116 Va. 211, 217, 81 S. E. 93; *Rhoton* v. *Rollins*, 186 Va. 352, 42 S. E. (2d) 323; *Bank of Old Dominion* v. *McVeigh*, 32 Gratt. (73 Va.) 530; *Allemong* v. *Gray*, 92 Va. 216, 23 S. E. 298.

In the construction of language contained in a deed the grantor must generally be considered as having intended to convey all that the language he employed is capable of passing to the grantee, and where the description admits of two constructions, it will be construed most favorably to the grantee. And the construction placed upon the language by the parties themselves is entitled to great weight in determining the intention of the parties. For example, where there is no express agreement between the parties with respect to the location of a way granted, but not located, the use by the grantee or owner of the dominant estate of a reasonable way, which is acquiesced in by the grantor or owner of the servient estate, sufficiently locates the way which the parties intended to create. See *Oakwood Smokeless Coal Corp.* v. *Meadows*, 184 Va. 168, 34 S. E. (2d) 392; *Holland* v. *Vaughan*, 120 Va. 324, 91 S. E. 122; *Eureka Land Co.* v. *Watts*, 119 Va. 506, 89 S. E. 968; *Gish* v. *Roanoke*, 119 Va. 519, 89 S. E. 970; *Bridgewater etc. Corp.* v. *Fredericksburg Power Co.*, 116 Va. 333, 82 S. E. 173; *Wilson* v. *Langhorne*, 102 Va. 631, 47 S. E. 871; 5 Michie's Jur., Deeds, § 58, p. 732.

In *Buckles* v. *Kennedy C. Corp.*, 134 Va. 1, 19, 114 S. E. 233, the court quoted with approval from *Atkins* v. *Bordman*, 2 Metc. (Mass.) 457, 468, the following: " 'When no dimensions of a way are expressed, but the object is expressed, the dimensions must be inferred to be such as are reasonably sufficient for the accomplishment of that object.' "

■ Although the Argabrite-Gardner deed fixes the width of the passway as five feet "along the southeast side of said building," the grant of the right of way is in general terms, and except for the phrase "to the rear end of the lot," its width and location are not fixed. The evidence shows that from time to time the appellants or their predecessor in title have entered the rear end of their lot over not only the entire 34 foot street frontage of the land now owned by

appellees, but over the rear of appellees' property from another street. However, the parties now agree that the right of way should extend from Main street, but disagree as to its width and length and whether it should be merged with the five foot passway.

The only living party to the Argabrite-Gardner deed, W. W. Argabrite, testified that the passway was created to insure light and air along the southeast side of the building and that if the grantors wanted to build on the remaining frontage of their land, a right of way for wagons and trucks, in addition to the passway, would be provided on the back of the lot. Nowhere in his testimony does he state, however, that it was the intention of the parties to grant a right of way of sufficient width for vehicles in addition to and adjoining the five foot passway, if it were convenient to include the passway within the space required for the right of way. There is no evidence that in their usage the passway and right of way have ever been distinguished or separated. Since the Argabrite-Gardner deed failed to locate the right of way, we hold that it is reasonable under the circumstances to merge the passway and right of way and thereby carry out the intention of the parties as expressed in the deed with a minimum of injury to both the servient and dominant estates. Hence, the trial court did not err in merging the two ways.

The owners of the servient estate at some time prior to 1943 built a filling station fronting on Main street in about the center of their land, and although it is no longer standing, the evidence shows that its northwest wall and roof. or eave were thirteen and one half feet and ten and one half feet respectively from appellants' building. This space between the filling station and appellants' building was used by appellants and their predecessor in title for purposes of access to the rear of their property. Van-type vehicles servicing the property could not pass under the roof of the filling station but could and did pass between the roof and appellants' building. In view of the usage thus made of the property and in the light of the facts and circumstances of the case, we hold that a width of ten feet after the building is brick cased is reasonably sufficient for the accomplishment of the purposes declared in the grant.

The trial court and the commissioner construed the language of the deed, "to the rear end of the lot," as limiting the right of way from Main street 60 feet to the point designated herein as B. This construction was apparently based on the fact that when the Argabrite-Gardner deed was executed in 1920 there was ample space at

the rear of the building then on the property to permit access to the rear of the building, and also that since the date of the conveyance the owners of the property have deprived themselves of access to the rear end of their building by building on their entire lot. It must, however, be kept in mind that the language of the deed is "to the rear *end* of the lot," and not to the rear end of the building nor to the rear of the lot. In any event, the effect of the trial court's holding is to permit access only to the 60 foot southeast side of the lot and no access to any part of the rear end of the lot.

The language employed in the deed is admittedly ambiguous and subject to more than one construction, and this is true regardless of whether the word "to" is construed as merely expressing direction or whether it is construed as meaning access. It will be recalled that the rear end of the northwest half of appellants' lot is 15 feet further from Main street than the rear end of the southeast half of the lot. While the right of way is not definitely described it is bounded by lines of reasonable enjoyment in view of its object and previous use. The evidence shows that both before and after the construction of appellants' building on the entire lot, appellees' land has been used for the purpose of access to the rear end of the lot. Furthermore, the language of the deed, "to the rear end of the lot," when read in connection with the preceding and following sentences, both of which refer specifically to the building in describing the rights there granted, clearly indicates an intent to grant a way to the rear-most end of the lot.

Consequently, under the facts and circumstances of this case, we hold that when the language of the deed is construed most favorably to the grantee, Dr. Gardner, as it must be, it granted a right of way from Main Street to the point designated herein as D.

For the foregoing reasons we affirm the decree appealed from, except: (1) Appellants shall have the right to brick case their building from Main street to the herein designated point B. (2) The merged passway and right of way shall be ten feet in width, exclusive of six inches for brick casing, and shall extend from a point on Main street, designated herein as point A, along and adjoining the lines of appellants' lot to and through the points herein designated as B and C and ending at the point herein designated as D. As thus modified the decree is affirmed.

*Modified and affirmed.*