# CIRCUIT COURT OF AMHERST COUNTY

Columbia Gas of Virginia, Inc.

v.

Frankie E. Drewry

May 9, 2016

Case No. CL15009508-00

By Judge Michael T. Garrett

This case involved a dispute between Columbia Gas of Virginia, Inc., (hereinafter "Columbia") and Frankie E. Drewry, a landowner. Columbia owns and operates an intrastate natural gas distribution pipeline located in Amherst County known as DAM 6 (hereinafter "the pipeline"). The pipeline was installed in 1956, is 6 inches in diameter, and has a maximum allowable operating pressure of 250 psi. The pipeline is part of the network that provides gas to businesses, residences, and schools, including a nuclear facility, hospital, and approximately 10,000 residential customers. The pipeline was installed across the subject property pursuant to an easement dated March 7, 1956, between L. H. Shrader and Beth W. Shrader, as Grantors, and Atlantic Seaboard Corporation, as Grantee. The agreement was recorded in the Amherst County Circuit Court Clerk's Office on April 18, 1956, in deed book 178, page 302. Columbia is a successor in interest to Atlantic Seaboard Corporation. The easement granted Columbia's predecessor the right to install and maintain a gas pipeline through the subject property.

Thereafter, L. H. Shrader and Beth W. Shrader developed a subdivision on the property upon which the easement was previously granted to Columbia's predecessor in interest. Drewry obtained title to the subject property, 354 Hilltop Drive, Madison Heights, Virginia, otherwise known as Lot 81, by deed dated January 27, 2015. On or about May 15, 2015, Columbia became aware that Drewry had constructed a wooden deck directly in the area of the pipeline with numerous support posts either directly above or in close proximity to the pipeline. Drewry also built an above-ground swimming pool in close proximity to the pipeline. Drewry also constructed a board

fence over the pipeline. Drewry did not contact "Miss Utility of Virginia, 811" before installing the swimming pool, deck, or fence as required by Virginia Code § 56-265.17, nor did he contact Columbia before said construction. Upon discovering the construction, Columbia conducted an electrical survey, known as a "close interval survey" on that portion of the pipeline running through the property to determine whether or not the pipeline or coating had been damaged as a result of the erection of the pool, deck, or fence. The result of the "close interval survey" indicated possible damage to the pipeline's protective coating, which is essential to the prevention of corrosion, which could lead to the catastrophic failure of the pipeline. Columbia filed suit requesting preliminary and permanent injunctions, as well as monetary damages. After a hearing on the preliminary injunction, the Court ordered Drewry to drain the pool, remove the deck boards and the support posts that were directly over the pipeline, and to remove a portion of the fence and posts believed to be directly over the pipeline. Drewry complied with the Court's order. Columbia conducted numerous "close interval surveys," dug up the pipeline, and conducted an inspection. Upon inspection, Columbia determined that the protective coating on the pipeline had breaches in the protective coating. However, the inspection also revealed that the construction of the fence, deck, and pool had not caused the damage to the pipeline coating. During the time that the pipeline was uncovered, Columbia stripped the protective coating from the pipe and recoated the pipe before reburying the pipeline. Columbia seeks a permanent injunction ordering Drewry to remove the deck, swimming pool, and fence from the easement. In addition, Columbia seeks $44,785.00 in reimbursement for the costs incurred in close monitoring, excavation, and reburying the pipeline. There are no factual disputes.

*Issues and Findings*

A. *Do the deck and wood privacy fence constructed by Drewry violate the easement such that they are "on or over" the pipeline or otherwise situated so that they will interfere with the construction, maintenance, or operation of the pipeline?*

The easement granted to Columbia's predecessors, the right to "lay, maintain, operate, and remove pipeline for the transportation of gas and appurtenances necessary to operate said pipeline" through the property of the Grantor together with the right of ingress and egress. The easement agreement further provided:

> Grantor shall not construct or permit to be constructed any house, structures or obstructions on or over or that will interfere with the construction, maintenance, or operation of

the pipeline or appurtenances constructed hereunder and will not change the grade of said pipeline.

The rights of the parties to the easement must be determined by the words used in the deed of easement applying ordinary rules of construction. *Hamlin v. Pandapas*, 197 Va. 659, 90 S.E.2d 829 (1956).

Based upon the testimony and a multitude of photographs introduced into evidence, the Court finds that the wooden deck and privacy fence were constructed directly over the pipeline. One of the supporting posts for the deck was located within twenty-six inches of the pipeline. Photographs introduced into evidence included pictures taken during the excavation process, which showed workers digging to uncover the pipeline using hand shovels. During most of this digging process, the employees also had to maneuver between the decking support joists in order to dig. The bottom of the floor joists for the deck were only twenty-seven inches from the ground, thus the Columbia workers had to stoop over in order to uncover the pipeline by hand using hand shovels.

The Court finds that the construction of the wooden deck and privacy fence violates the specific terms of the easement which prohibited the construction of any structure or obstruction "on or over" the pipeline.

B. *Does the above-ground pool constructed by Drewry violate the easement such that it is "on or over" the pipeline or otherwise situated so that it will interfere with the construction, maintenance, or operation of the pipeline?*

The above-ground pool in question contains approximately 10,000 gallons of water. The pool is constructed within twenty-two inches of the pipeline. The expert testimony presented at trial indicated that the location of the pool with 10,000 gallons of water interfered with the method and means of excavating the pipeline. In addition, the expert testimony indicated that the presence of 10,000 gallons of water created an undue risk and danger to employees attempting to unearth the pipeline for any repairs. The Court finds, based upon testimony presented, that it is and would be unsafe for pipeline employees to attempt to excavate with the pool full of water weighing approximately 70,000 pounds within twenty-two inches of the pipeline. The pool cannot be quickly and safely drained in the event of an emergency, as it takes several hours to pump the water out of the pool. Further, the experts testified that due to the location of the pool, they would be unable to use equipment to dig up the pipeline and/or taper the edges to prevent a cave-in due to the close proximity of the pool.

The specific language of the easement in question with regard to the swimming pool provides that the grantor shall not construct any structures or obstruction that would interfere with the construction, maintenance, or operation of the pipeline. The Court specifically finds that the location of

a 10,000 gallon swimming pool in such proximity to the high pressure gas line interferes with the operation and maintenance of the pipeline.

The easement in this case does not specify the exact dimensions; however, it specifies the purpose. As the Supreme Court of Virginia held in *Anderson v. Delore*, 278 Va. 251, 257, 683 S.E.2d 307 (2009), when the easement does not specify the dimensions of the easement, it should be inferred "to be such as are reasonably sufficient for the accomplishment of that object."

The expert testimony presented in this case indicates that the location of the swimming pool delayed both the method and the time required to uncover the pipeline. The inability to use trenches and "bench" the trench increased the risk of collapse, and made the work more hazardous to the workers and the pipeline. The location of the above-ground pool weighing 70,000 pounds increases the danger of a cave-in, thus, both the workers and the public at large are exposed to great risk in the event that a cave-in causes damage to the pipeline. The Court finds that in an emergency, the swimming pool poses a danger interfering with Columbia's access to the pipeline as outlined in the easement. The Court finds that even in the absence of an emergency, the swimming pool interferes with the maintenance and operation of the pipeline, and as such, it violates the easement prescription of the construction of "any houses, structures, or obstructions . . . that will interfere with the construction, maintenance, or operation of the pipeline."

C. *Is Columbia entitled to injunctive relief requiring Drewry to remove the deck, pool, and privacy fence?*

The Court found above that the deck, pool, and privacy fence violate the express terms of the easement. As such, they are a continuing trespass upon this easement. The Court finds that these are material encroachments on an express easement and the grantees right to free and continuous use of the easement. Further, the Court finds testimony presented indicates a multitude of circumstances in which irreparable harm would be caused to the defendant, his family, pipeline workers, and the community. In the event of a gas leak, the employees cannot, in a timely manner, gain access to the pipe due to the obstruction, thus increasing the likelihood of a catastrophic failure and/or explosion. Testimony indicated that, due to the obstructions, it took days, rather than hours, to uncover the pipeline. In addition, more than 10,000 customers rely upon the delivery of the natural gas through the pipeline, including a school, hospital, businesses, and nuclear facility. A prolonged outage of natural gas could have serious consequences to tens of thousands of people and businesses. The Court finds that there is no adequate remedy at law. The equities and the public interest warrant the issuance of a permanent injunction against the defendant to remove the swimming pool, wooden deck, and privacy fence. The Court further finds that the defendant's construction of the swimming pool, deck, and fence,

without calling Miss Utility of Virginia, 811, as required by law, resulted in the construction in contravention of the express terms of the easement. The benefit to the resident's community, as well as, to Columbia and the defendant, outweigh any cost of removing the obstructions. Lastly, the Court finds that the public interest will be served by the issuance of the injunction as it will provide for reliable delivery of natural gas, significantly lessen the danger of damage to persons and property, and discourage further encroachments upon pipeline easements.

*D. Is Columbia entitled to damages from Drewry for inspection, monitoring, and digging up the pipeline due to the construction of the deck, pool, and fence?*

The Court finds that as a result of preliminary testing, Columbia determined that there might be a "holiday" or gap in the protective coating on the pipeline. As a result thereof, Columbia increased monitoring, including close interval survey of the property. Thereafter, Columbia uncovered the pipeline using hand shovels, which took over four days to complete. Nonetheless, the Court finds that Columbia is not entitled to monetary damages in this case due to a variety of factors. First of all, the damages to the protective coating, based upon the testimony of the plaintiff's own experts, was not due to the construction of the deck, pool, or fence. Thus, those damages were not caused by the defendant's actions. While the Court clearly finds that the defendant's actions increased the difficulty in uncovering the pipeline in the manner in which the men had to work, the Court cannot find from the evidence presented that the defendant differentiated between the cost that that would have been incurred had the pipeline not been obstructed verses the cost of digging up the pipeline free and clear of obstructions. Therefore, the Court denies any claim for money damages against the defendant.

### *Holdings*

For the reasons set forth above, the Court rules as follows:

1. The deck and privacy fence constructed by Drewry are located directly over the pipeline and as such, violate the easement in that it is on or over the pipeline. Accordingly, Drewry will be ordered to remove or relocate the deck.

2. The swimming pool constructed by Drewry is located so close to the pipeline that it violates the easement in that it interferes with the maintenance of the pipeline. Accordingly, Drewry will be ordered to remove or relocate the above-ground swimming pool.

3. The Court denies Columbia's claim for monetary damages from Drewry as it finds that the actions of Drewry in the construction of the deck, pool, and fence in no way damaged the pipeline thereby necessitating repair.

The damages sought by Columbia were for the entire costs to monitor, dig up, inspect, and repair the break in the coating without differentiation for the increases to the costs specifically caused by the obstruction of the deck, pool, and fence.