# Richmond.

Norfolk & Western Railway Co. v. Obenchain.

November 21, 1907.

Absent, Cardwell, J.

1. Equity Pleading—*Parties Defendant—Lack of Interest or Liability.*—A demurrer to a bill to restore a water-right is properly sustained as to a .defendant who is not charged to have obstructed the right, whose rights are not involved in the suit, and against whom no relief is prayed either by the complainant or his co-defendant.

2. Deeds—*What Passes—Appurtenances—Water Rights.*—A grant of all the grantor's "right, title and claim of whatever kind, in and to" certain property carries with it, as an appurtenance, the easement of a waterway over the lands of the grantor to and for the use of the premises granted, although such easement be not expressly mentioned. Code, Sec. 2443.

3. Easements—*Abandonment.*—The mere nonuser of an easement which has been created by grant does not extinguish it, or show that it has been abandoned. To show this, there must be acts by the owner showing an intention to abandon, or an adverse user by the owner of the servient tenement, acquiesced in by the owner of the dominant estate. Nothing short of a user by the owner of the servient estate, which is adverse to the enjoyment of the easement by the owner thereof, for a period sufficient to create a prescriptive right, will destroy the right granted.

Appeal from a decree of the Circuit Court of Botetourt county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*E. M. Pendleton,* for the appellant.

*W. B. Simmons* and *Benj. Haden,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This bill in chancery was filed by the appellee, D. C. Oben-chain, against the appellant and James Mundy, to have restored a certain water right alleged to have been obstructed by a wide and high fill made by the Norfolk & Western Railway Com-pany over the route of the race and trunk, formerly used in conducting the water over the right of way granted by J. J. Echols to the Shenandoah Valley Railroad Company in August, 1881. The complainant claims that he owns this water right, and is entitled to have it flow from its source, unob-structed, to his foundry and machine shops; and that he has acquired this right under his purchase of this property from his grantor and her predecessors in title.

By decree of September, 1905, a demurrer to the bill by James Mundy, was sustained, and the bill dismissed as to him; and in June, 1906, the cause was considered on its merits, upon the proceedings had therein, and a decree entered, holding that the complainant was entitled to the water right in question as appurtenant to his foundry and machine shop lot; and the court, not being then advised as to the best method of affording the complainant relief, recommitted the cause to its master commissioner, who was directed to inquire and report whether the defendant railway company should be required uncondi-tionally to remove the obstruction, or whether it should be re-quired to provide a passageway for the water through its fill, and, if the latter, to locate the point at which such passage-way should be constructed and the size of the same. From both of these decrees, this appeal has been taken.

We are of opinion that the circuit court committed no error

in sustaining the demurrer of James Mundy and dismissing the bill as to him.

The only reference to James Mundy in the bill is that, by his deed of April 30, 1901, he had attempted and pretended to convey the water right in question to the appellant company, charging that Mundy did not own such water right, and that the railway company, therefore, acquired no rights under such pretended deed, which was void. The bill charged that the water right had been obstructed by the N. & W. Ry. Co. making a fill across the water course. It does not charge that Mundy had obstructed the water right; that he owned any land through which the water would run; or that he had any control over, or right to, the water. It does not allege that Mundy can or should be required to restore such water right if the complainant is entitled to it. No relief is prayed against Mundy, the prayer of the bill being that the appellant railway company be required to remove the fill, or that it be required to pay a money compensation in lieu of such removal, and that it be enjoined from further interfering with the flow of the water. There is no issue made by the pleadings between Mundy and the appellant railway company. The answer of the appellant was not filed as a cross bill, and Mundy was not made a party to it, and was not required to take any notice of its allegations. If it be claimed that Mundy is under a liability to the railroad company by reason of his deed of April 30, 1901, he is entitled to be properly impleaded by the company before a hearing of the controversy, in which controversy, so far as this record shows, the appellee, Obenchain, appears to have no interest.

We are further of opinion that there is no error in the decree of June, 1906, holding that the appellee, D. C. Obenchain, is entitled to the water right in question.

The record shows that in the year 1873 the property in controversy, together with other property, was sold and conveyed to one J. J. Echols by L. Linkenhoker, a special commissioner

of the court.   This deed from Linkenhoker, commissioner, to
Echols conveys the water right in controversy to Echols, and
by the citations it contains shows that, for many years prior
thereto, this water right was recognized and reserved in the
deeds conveying this foundry and machine shop property.   In
August, 1881, J. J. Echols granted and conveyed to the Shen-
andoah Valley Railroad Company, the predecessor in title to
the appellant, a right of way for its railroad through these
lands.   In this deed, the grantor expressly reserved the right
to have this water continue to flow uninterruptedly to his foun-
dry and machine shops, and the Shenandoah Valley Railroad
Company covenanted to so protect such water-way over the
land conveyed to it as not to diminish the flow or affect the fall
of the water in its passage to the machine shops.   Subsequently,
in October, 1881, Echols conveyed the foundry and machine
shop lot, as to which he had reserved the water right in his
deed to the Shenandoah Valley Railroad Company, to James
Mundy, making special reference to the Linkenhoker deed as
the source of his title and for a particular description of the
property he was then conveying.   In October, 1890, James
Mundy conveyed all of his right, title, claim and interest, of
whatever kind, in the controverted property to the Riverside
Land Company, and it has passed, with its appurtenances, from
that company through several alienations to the appellee, Oben-
chain, whose deed from Emma J. McLaughlin is dated Feb-
ruary 26, 1902.

In April, 1901, the appellant railway company, the suc-
cessor in title to the Shenandoah Valley Railroad Company,
desiring to do away with the trestle then in use and to substi-
tute the fill complained of across the water way, obtained from
James Mundy, who had theretofore parted with the property,
a deed reciting the covenant of the Shenandoah Valley Rail-
road Company, to protect the water right, and releasing the
appellant from all obligation with respect to such water right,

and authorizing it to fill up the space over the waterway there-tofore spanned by the trestle.

The contention of the appellant is, that there is no express grant of the water right in the deed of October, 1890, from James Mundy to the Riverside Land Co., and nothing therein to indicate an intention to convey any water right; that the foundry and machine shops were then in a state of decay; and that the Riverside Land Co. bought the property to be divided up into town lots, which was done and the plat thereof recorded.

Mundy conveyed to the Riverside Land Co. *all of his right, title and claim, of whatever kind, in and to the controverted property;* among these rights which he owned was the water right in question, which had been conveyed to him by Echols, and the preservation and protection of which had been expressly guaranteed to the property by the recorded covenant of the Shenandoah Valley Railroad Company, before Mundy became the owner. It is true that the water right was not specifically mentioned in the deed from Mundy to the Riverside Company, but it was not *reserved* or *excepted* from that grant, and hence the easement passed from the grantor, as an appurtenance passing with the land, as fully as the buildings or other rights appurtaining thereto.

The code provides that, "Every deed conveying land shall, unless an exception be made therein, be construed to include all buildings, privileges, and appurtenances of every kind belonging to the lands therein embraced." Code, 1904, sec. 2443.

This right of easement originated by express grant, and is shown to be reasonably necessary to the beneficial enjoyment of the property in question, to which it is an appurtenance. Its preservation as an important appurtenance to the property was carefully guarded and protected when the right of way was granted to the Shenandoah Valley Railroad Company, and it has passed without qualification or reservation as a property right from those who originally created it, through successive

owners, to the appellee, D. C. Obenchain. As late as April, 1901, the appellant, in changing its track from a trestle to a fill, recognized the existence of this water right and its value by attempting to buy it from James Mundy, and to obtain from him a release of the obligation it was under, by reason of the covenant of its predeccessor, to preserve and protect the same.

It is true, as contended, that this property has for a long time been in a dilapidated condition, and that the water right in controversy has not been used for a number of years; but the mere nonuser of an easement which has been created by grant does not extinguish it, or show that it has been abandoned. Angell on Water Courses, sec. 252.

In *Watts* v. *Johnson R. E. Corp.* 105 Va. 519, 525, 54 S. E. 317, 319, it is said, citing numerous authorities: "The doctrine, too, is well settled, that mere nonuser of an easement created by deed for a period, however long, will not amount to abandonment. To show this there must be acts of the owner showing an intention to abandon, or an adverse user by the owner of the servient estate, acquiesced in by the owner of the dominant estate. Nothing short of a user by the owner of the servient estate, which is adverse to the enjoyment of the easement by the owner thereof, for a period sufficient to create a prescriptive right, will destroy the right granted."

The record in the case at bar does not justify the conclusion that the appellee, Obenchain, has abandoned the water right in controversy, or that it was ever abandoned by those under whom he claims.

For these reasons, the decrees complained of must be affirmed.

*Affirmed.*