# Richmond

LULA BELLE VANCE, JOHN BREEDLOVE AND WILLIAM VANCE
v. A. W. DAVIS.

March 15, 1954.

Record No. 4177.

Present, Hudgins, C.J., and Eggleston, Spratley, Miller, Smith and
Whittle, JJ.

The opinion states the case.

*Burns & Lively*, for the appellants.

*J. E. Duff*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

This litigation arises out of a dispute between the parties over their relative rights to the water from a spring. The principal facts are not in dispute and may be stated thus:

In 1935 a suit was instituted for the partition of certain lands in Russell county of which W. R. Davis had shortly theretofore died seized and possessed. Commissioners appointed by a decree of the court filed their report which allotted to Mildred Davis Franklin tract No. 4 containing approximately 52 acres of land, on which the spring here in controversy is located, and to A. W. Davis, the appellee, tract No. 2 containing approximately 32 acres. The commissioners' report, after having assigned to the owners of certain allotted tracts "the right to pipe water from" other springs on the property, carried this provision with respect to the spring here involved: "Also we assign or give the right to keep up and use the water pipe now in use from tract No. 4, to the tract No. 2, for the use of the owner of tract No. 2." This report was duly confirmed by a decree entered on February 13, 1936.

The appellee, A. W. Davis, still owns tract No. 2 on which his residence is located. In 1943 Lula Belle Vance, one of the appellants, acquired tract No. 4, on a portion of which she now resides. In each of the conveyances in her chain of title there is a specific reservation of the right of

the owner of tract No. 2 to use the water from the spring located on tract No. 4.

John Breedlove, another of the appellants, resides on a portion of tract No. 4 which he purchased from Lula Belle Vance, his mother-in-law. William Vance, the third appellant, lives on a portion of tract No. 4 which is still owned by his mother, Lula Belle Vance.

At the time of the entry of the decree in the partition suit A. W. Davis, who then resided on tract No. 2, and T. W. Davis, his brother, who at that time resided on tract No. 4 and in the same house now occupied by Mrs. Vance, were using the water from a small concrete reservoir 51 inches long, 36 inches wide, and 33 inches deep, which had been constructed about 30 feet below the spring. The outlet supplying the T. W. Davis property was at the bottom of the reservoir, and that serving the A. W. Davis property was 28 inches above the bottom and 5 inches below the top of the reservoir. The flow to the T. W. Davis property was controlled by spigots, while that to the A. W. Davis property was uninterrupted in order that A. W. Davis might have running water in his springhouse. Under this arrangement there was at that time an ample supply of water for both residences.

When John Breedlove built his house about 1945 on a portion of tract No. 4, he, too, drew water from the reservoir by an outlet about 20 inches from the bottom of the reservoir and below the outlet leading to the A. W. Davis residence.

The William Vance house was first occupied by Vance and his family about 1948, and had no connection with the reservoir. But the needs of his household were supplied from the reservoir, which was only a short distance away, by buckets carried by hand.

Shortly before the present suit was instituted, the record does not show just when, the parties agreed to discard the small reservoir then in use and in bad condition and construct a new one 6 feet 6 inches long, 6 feet 6 inches wide,

and 4 feet 10 inches deep. While the appellee, Davis, paid a small part of the cost of constructing the new reservoir, the principal cost was borne by the appellants. The parties were unable to agree as to the relative locations of the outlets from the new reservoir to the four residences. The appellants suggested that the outlet leading to the Lula Belle Vance residence should be at the bottom of the reservoir, that leading to the Breedlove residence 18 inches above the bottom, that leading to the William Vance residence 30 inches above the bottom, and that leading to the Davis residence 43 inches above the bottom and 15 inches from the top. Davis would not agree to this. While he agreed that both Breedlove and William Vance, as well as Lula Belle Vance, might connect with the reservoir, he insisted that all of these connections should be made in such manner as not to interfere with his supply of water. He suggested that his outlet be at the same level as that leading to Lula Belle Vance's residence, and below those leading to the Breedlove and William Vance residences.

This disagreement between the parties precipitated the present litigation which was begun by the filing of a bill in equity by A. W. Davis against the three appellants. In substance, the bill charged "that under his title papers" he (A. W. Davis) was "entitled to all the water from said spring" if that be "necessary to supply his reasonable needs for domestic purposes;" that the appellants were entitled only to the surplus water or overflow; and that the appellants were interfering with his rights.

The prayer of the bill was that the appellants be enjoined from "interfering" with the appellee's right to pipe water from the spring; that an order be entered "directing" the appellants "to cease using water from said spring," or, in the alternative, that they be required to insert their pipe lines in the reservoir in such manner as would not interfere with the appellee's "right to a constant flow of water" therefrom.

The appellants answered denying the appellee's prior right to the water from the spring. They allege that under a

proper interpretation of the decree entered in the partition suit, the appellee was entitled only to so much water from the spring as was "reasonably necessary to supply his domestic needs," and that beyond this the appellants were entitled to the flow.

The lower court entered a decree granting the appellee's prayer for a temporary injunction, which restrained the appellants "from preventing or interfering" with the appellee's "installing and maintaining a pipe line leading from said spring to his residence to carry water for reasonable domestic purposes." By the further terms of the decree the appellee was "authorized to connect his said pipe line to said spring in such manner as to afford him equal facilities with all other interested parties in said spring so as to afford him ample flow of water from said spring to his said residence for all reasonable domestic purposes."

Shortly after this decree was entered the appellee, Davis, without the consent of Mrs. Vance, relocated a portion of his pipe line which led across the Vance lands so that it bypassed the new reservoir and went directly into the spring and underneath the pipe leading from the spring to the reservoir. This gave him priority in the water flow. Thereupon the appellants filed an amended answer and cross-bill, claiming in substance that their rights to the flow of water from the spring were superior to the rights of the appellee, and praying that the preliminary injunction be dissolved; that the appellee be enjoined from trespassing upon the lands of Lula Belle Vance; and that he be required to remove the pipe which he had placed directly into the spring in the manner related.

In his answer to the cross-bill the appellee admitted that he had placed his pipe into the spring and claimed the right to do so under the terms of the preliminary injunction.

After the issues had been thus joined depositions were taken which developed the facts hereinabove related. While the appellee denied it, the preponderance of the evidence shows that much of the pipe leading from the reservoir to

his residence is in bad condition which results in a considerable waste of the water.

The appellee admits that since he has abandoned the use of his springhouse a continual flow of water to his residence is not necessary, and that he is willing to check the flow by using spigots which he has already installed.

The witnesses seem to agree that under normal conditions the spring will supply sufficient water for the reasonable needs of all of the parties to the suit.

In the final decree appealed from the lower court decreed that the appellee, Davis, was entitled to take from the spring a sufficient amount of water to supply his "reasonable needs * * * for domestic purposes," and that his rights were "equal to" or "as high as" those of Lula Belle Vance. It further decreed that "in order to consummate his rights" thus defined, the appellee had "the right to insert his pipe line *in said spring* so as to obtain a reasonable supply of water for domestic purposes" (italics supplied), and that he should "have the right of ingress and egress" to the spring "for the purpose of installing his pipe line" and to effect any repairs thereon as might be "necessary or advisable" in the future. The decree further provided that the appellee should "keep his pipe line in reasonable repair so as to conserve the water supply" from the spring and "make and effect said repairs within a reasonable time."

From that decree the appellants have appealed. The substance of their assignments of error is that (1) the lower court failed to interpret correctly and to apply properly the provisions of the partition decree which fixed the rights of the parties; (2) the decree is ambiguous and fails to define clearly the rights of the parties with respect to the use of the water from the spring; (3) the decree erroneously permits the appellee to insert his pipe into the spring so as to give him a superior right to the water, whereas it should have required him to remove such pipe, as prayed in the cross-bill, and insert it at a proper level in the newly constructed reservoir; and (4) the court erred in not enjoining

the appellee from trespassing and relocating his pipes on the lands of Lula Belle Vance, as prayed for in the cross-bill.

Since it is undisputed that the appellant, Lula Belle Vance, is the owner in fee simple of the land on which the spring is located, she is entitled to the use of the water therefrom, subject to the easement which the decree of the court in the partition suit has granted to the owner of tract No. 2. Conversely, the rights of the owner of tract No. 2 to the use of the water from the spring are defined by the terms of that easement. It is conceded that the easement in favor of the owner of tract No. 2 runs with the land.

The language used by the commissioners, "the right to keep up and use the water pipe now in use from tract No. 4, to the tract No. 2, for the use of the owner of tract No. 2," does not describe the manner in which the water was then being taken from the spring and carried across tract No. 4 for the benefit of the owner of tract No. 2. Therefore, we must look to the surrounding circumstances in order to determine the intent of the commissioners whose act, confirmed by the court, created the easement. *Stephen Putney Shoe Co.* v. *Richmond, F. & P. R. Co.*, 116 Va. 211, 217, 81 S. E. 93; *Rhoton* v. *Rollins*, 186 Va. 352, 360, 42 S. E. (2d) 323, 327.

As has been said, the evidence shows that at the time of the confirmation of the commissioner's report in the partition suit, the owners of tracts Nos. 2 and 4 were both using the water from the spring which had been collected in a small concrete reservoir; that an outlet placed at the bottom of the reservoir led to a pipe which carried water to the residence on tract No. 4, while another outlet, 28 inches above the bottom and 5 inches below the top of the reservoir, led to a pipe which carried the water across tract No. 4 to the residence of the owner of tract No. 2. While the flow through the lower pipe to tract No. 4 was controlled by spigots, the flow from the upper pipe which led to tract No. 2 was uninterrupted. Under this arrangement there was a sufficient supply of water for the reasonable needs of the

then occupants of the two tracts. It was the purpose and effect of the partition decree to maintain that situation.

"As a general rule, when the character of an easement is once fixed, no material alterations can be made in physical conditions which are essential to the proper enjoyment of the easement except by agreement. This applies to both the owner of the easement and to the owner of the fee. The test to determine the right to make a particular alteration is whether the alteration is so substantial as to result in the creation and substitution of a different servitude from that which previously existed. * * * " 17 Am. Jur., Easements, § 112, p. 1006. See also, 28 C. J. S., Easements, § 53, pp. 716, 717.

Here there is no contention that the construction of the new reservoir constituted such an alteration of the character of the dominant estate as to extinguish the easement. Certainly, neither the appellee, the owner of the dominant estate, nor the appellant, Lula Belle Vance, the owner of the servient estate, so considered it. Both understood that Davis, the owner of tract No. 2, had the right to continue to share in the water supply. The problem is how, in the absence of an agreement between them, the rights of the parties should be applied in the altered conditions.

Clearly, the appellee had no right to insert his pipe into the spring in such a manner as gave him a prior right to the flow and enabled him to draw off the entire supply if he was inclined to do so. Accordingly, we think the decree was in error in not requiring him to remove his pipe from the spring, as prayed for in the cross-bill.

Since the evidence shows, and it was agreed in the oral argument before us, that there will be a sufficient supply of water for the reasonable needs of both the appellee, Davis, and the appellant, Lula Belle Vance, we are of opinion that they should be allowed to install in the reservoir, with outlets at the same level, pipes of equal size and of approximately the same size as those in use at the time of the entry of the decree in the partition suit, so that they may share

equally in the supply of water. Inasmuch as the evidence also shows that there is no further need for a continual flow of water to the Davis property, the flow through his pipe as well as that to the Lula Belle Vance property should be conserved by spigots.

It is equally clear, we think, that the rights of the appellants, John Breedlove and William Vance, to share in the water from the spring are subordinate to the rights of the appellee, Davis, and those of the appellant, Lula Belle Vance. Indeed, they have only such rights as they may acquire from Lula Belle Vance, without interfering with the rights of the appellee, Davis. Therefore, with the consent of Lula Belle Vance, Breedlove and William Vance may be permitted to draw water from the reservoir by outlets so placed as not to interfere with or diminish the supply of Davis.

We are further of opinion that the decree should have enjoined the appellee, Davis, from locating his pipe line on the lands of the appellant, Lula Belle Vance, along a right of way different from that on which it was located at the time of the entry of the decree of partition.

Since, as we have said, the preponderance of the evidence shows that much of the pipe line leading to the Davis property is in bad condition, the decree hereinafter provided for should require that that line be put in good repair within thirty days of the entry of the decree, and that both pipe lines be so maintained during the continuance of the easement.

For these reasons the decree appealed from will be reversed and the cause remanded for the entry of a proper decree in accordance with this opinion. The appellants having substantially prevailed on this appeal, will recover their costs of the appellee, Davis. Code, sec. 14-178.

*Reversed and remanded.*