# Richmond

## S. D. MAY, COMMISSIONER, ETC. v. FRANK B. BRADLEY.

October 12, 1959.

Record No. 4983.

Present, All the Justices.

The opinion states the case.

*M. Ray Johnston, Assistant Attorney General (A. S. Harrison, Jr., Attorney General; Francis C. Lee, Assistant Attorney General,* on brief), for the appellant.

*George E. Allen, Sr. (Allen, Allen, Allen & Allen,* on brief), for the appellee.

SNEAD, J., delivered the opinion of the court.

This is an appeal of the Commonwealth by the State Highway Commissioner from a decree denying specific performance of an option-agreement it entered into with Frank B. Bradley concerning the sale of .51 acre of his land, situated on the northwest corner of the intersection formed by Routes 360 and 643 in Hanover county, for highway purposes.

All of the testimony, which is in deposition form, was taken before a notary public on January 30, 1958.

The option-agreement was executed by Bradley and delivered by him to the Commonwealth on November 29, 1951. His wife, Josephine M. Bradley, did not sign the instrument, although it provided for her signature as well as that of her husband. It recited: "It is proposed by the Commonwealth to construct or otherwise improve a part of State Highway Route 360, Project 2342-01-02, between 0.147 Mi. E. of Mechanicsville and 6.574 Mi. E. of Mechanicsville in Hanover County, Virginia, in accordance with plans and specifications on file in the office of the Department of Highways, * * *." It did not provide when the project was to begin or be completed.

It further provided:

"NOW THEREFORE, For and in consideration of the premises, and of the benefits accruing or to accrue to the landowner by reason of the location and construction, or other improvement of said highway, and for the further consideration of one dollar in hand paid to the landowner, receipt of which is hereby acknowledged, the landowner doth hereby covenant and agree to grant and convey in fee simple unto the Commonwealth by deed of general warranty, properly executed, acknowledged and delivered, and free from encumbrances, and with usual covenants of title, upon demand of the Com-

monwealth, and upon payment to landowner of the additional consideration as hereinbelow detailed, * * *.

\*     \*     \*     \*     \*     \*     \*

"Consideration of $1,200 in full including 0.51 acre land @ $600= $306 and $894 due to decreasing depth of corner commercial site and cutting off triangle at corner of property."

The option-agreement also contained a provision whereby it could be accepted by the Commonwealth within one year, (1) by giving notice in writing to the landowner of its intention to accept, or by demanding a deed under the provisions of the option; or (2) by commencing construction or improvement of the highway, along, through and over the land in question. If not accepted in the time and manner set forth, the option would become null and void.

By letter dated January 28, 1952, the Assistant Attorney General assigned to the Department of Highways instructed Edward P. Simpkins, Jr., an attorney at law, who represented the Department of Highways in Hanover County for the closing of real estate transactions, to examine the title to the Bradley property, as well as property of others being acquired. A check was enclosed for the agreed purchase price and he was further instructed not to release it until he was prepared to furnish the Department a title certificate to the effect that in his opinion a fee simple title, free and clear of all liens and encumbrances, would vest in the Commonwealth. The unexecuted deed to the Bradley property had been prepared by the Department and forwarded Simpkins on January 16, 1952. It provided for the signatures of both Bradley and his wife.

Later Simpkins visited Bradley's place of business. He advised Bradley that he had received from the Department his check for $1200 and a deed of conveyance for execution, and that after he had examined the title to the property he would bring them to him. Whereupon, Bradley informed Simpkins it would be useless because he was not going to sign the deed. Being so advised, Simpkins did not search the title or formally present the check and the deed for execution. By letter dated June 2, 1952, Simpkins advised the Department of Highways of Bradley's refusal to abide by the contract. The instrument was recorded in the Clerk's Office of Hanover County Circuit Court on June 16, 1952.

On December 12, 1957, the Commonwealth instituted a suit against Bradley for specific performance of the option-agreement. Mrs.

Bradley, who had not signed the option, was not made a party defendant. The prayer of the bill of complaint follows:

"Your plaintiff, therefore, prays that the defendant, Frank B. Bradley, may be decreed specifically to perform the said agreement entered into with your plaintiff as aforesaid, and to make a good and sufficient deed to your plaintiff for the said described property; your plaintiff being ready and willing, and is hereby offering specifically to perform the said agreement on its part, upon the defendant's making out a good and sufficient title to the said property and executing a proper conveyance therefor to your plaintiff, pursuant to the terms of said agreement, to pay the defendant the purchase money due."

Paul P. Gilmore, district right of way engineer for the State Highway Department, testified that the option-agreement signed by Bradley was a standard form used by the Commonwealth in acquiring property for highway purposes; that one phase of the project was started on April 22, 1952 and completed on July 22, 1953, which consisted of widening and hard-surfacing about 2 feet of Route 360 adjacent to the Bradley property and also widening the shoulder area and moving the ditch onto the option property, and that the option was secured for the purpose of improving and widening the present traffic lane and also for the ultimate construction of another lane. He stated that the option property is used in connection with the maintenance of the travelled portion of the highway; that the public actually travels over the improved corner of the option property where Routes 360 and 643 intersect, and that the Department had placed a monument at a point which separates the option property from the remainder of Bradley's land. In response to a question on cross-examination, Gilmore stated the Department was not willing to accept a deed to the property without the signature of Bradley's wife, but his answer was later qualified on redirect examination. There he said he did not know whether the Department would accept such a deed and it was for the legal department to decide.

Bradley, a fertilizer manufacturer, farmer and an oil distributor, testified that he considered the corner of which the option land was a part to be a valuable location for a filling station which he contemplated erecting, but could not do so until the road was built; that his wife would not sign the deed, and that the telephone company had moved the poles and lines back on the optioned property.

In answering, over the objection of the Commonwealth, the question of what occurred Bradley stated that he told Gilmore he

was losing money by selling the property for $600 an acre but would sell provided the road was constructed within 6 months; that he signed and delivered the agreement after Gilmore said the road, including a third lane, would be completed within 6 months, and that he refused to execute the deed because the promise had not been fulfilled. In reference to what work had been done on the highway he said: "The right of way over there is still a 30 foot road. All they have done is just like they do all others: pull the ditches up, go ahead and throw black top on it, or gravel, and cut the banks down. They haven't cut off any banks. They are the same thing."

Christopher L. Dunn, bookkeeper for Bradley, who was present when the option-agreement was discussed and signed, was called to testify. Counsel for the Commonwealth again objected to any parol evidence that would vary, alter or change the terms of the written agreement, and counsel for Bradley again stated the evidence was being offered to show the option was delivered upon a parol condition, to be effective only in event of the performance of that condition. He stated that Bradley was "hesitating to sign the option until he knew when the road was going to be built", and that when he had assurance it would be constructed in 6 months he said he would execute the instrument, which was done. A part of Dunn's testimony on cross-examination follows:

"Q. Did Mr. Gilmore make any statement as to the type of road, or construction, that was going to be made on this project?

"A. No, he just said the road would be built within six months.

"Q. Did he say how many laned road it would be?

"A. Not that I recall.

"Q. Did he say whether or not the shoulders were being widened?

"A. I don't think any mention was made of the shoulder. He said the road. I understood it would be the complete road. The whole road. All the lanes."

In his rebuttal testimony, Gilmore stated that he did not recall having guaranteed Bradley that an extra hard-surfaced lane would be constructed on the option property. He was asked: "Did you tell him that the construction that you just mentioned a few moments ago as having been done would be done within a specific time?" His reply was: "I think that I told Mr. Bradley that the present project would be constructed within a reasonable length of time. I don't recall whether I used the exact number of months, but I knew at that time it would be constructed because they were pressing

me to get the right of way clear, so they could proceed with the construction." That construction, he said, was commenced within 6 months from the date of the option and on a portion of the option property, and is the same construction that existed on Route 360 at the Bradley property at the time of his deposition.

It must first be decided whether the Commonwealth accepted the option in the time and manner stated therein. If it did not, there is no contract for the sale of the land in question and it necessarily follows that specific performance will not lie. Bradley contends there was no acceptance. The Commonwealth maintains that the option was accepted under its terms by "commencing construction or improvement of said highway, along, through or over said land" on April 22, 1952, which was within one year from the date of the option. The evidence shows that Route 360, consisting of two lanes, was at that time widened and hard-surfaced about two feet on the side of the road adjacent to Bradley's property; that the shoulders on both sides were widened, and that vehicles travel over the corner of the option property where Route 360 intersects with Route 643, which was improved at the same time.

When Gilmore was asked whether the widening covered any part of the land embraced in the option-agreement, he stated: "Only a few feet along the front, in connection with widening the shoulder area and pulling the ditch line further onto the property." Areas for shoulders and drainage ditches are essential to highway rights of way. It is not necessary for all land acquired to be utilized for the travelled portion of the roadway itself. Thus we see a part of the option land has been improved and used for highway purposes, and more of it will be used when the proposed third lane is constructed. Moreover, months before time for acceptance of the option expired, Simpkins, who had received the deed from the Department for execution, was advised by Bradley that he would not sign it. Hence it would have been an idle gesture to demand its execution. Bradley complains that the Commonwealth failed to tender a deed in accordance with the option-agreement because it also provided for his wife's signature. It is noted that Bradley had not seen the deed when he said he would not sign it, and that could not be a valid reason for his refusal to sign. We hold that the option was duly accepted.

Here the option-agreement was signed by Bradley, but his wife did not sign it. The suit for specific performance is against him alone and the Commonwealth is willing to accept the deed con-

tracted for subject to Mrs. Bradley's outstanding contingent right of dower and pay the full purchase price provided for in the agreement.

A court of equity will decree specific performance of a written contract to sell real estate owned in fee by the husband whose wife refuses to release her inchoate dower interest, provided the vendee is willing to accept a deed without the relinquishment of the wife's inchoate dower interest, and asks no abatement of the purchase price set forth in the contract or an indemnity on account of such refusal.

In *Ford* v. *Street*, 129 Va. 437, 443, 444, 106 S. E. 379, the court stated:

"It is claimed that the contract cannot be enforced against the husband leaving the wife's inchoate and contingent right of dower in the real estate unaffected. This question must be regarded as settled in Virginia, for it is expressly held in *Steadman* v. *Handy*, 102 Va. 383, [382] 46 S. E. 380, that where the vendee is willing to accept such a deed without the wife's relinquishment of her contingent right of dower, and asks no abatement in the purchase price, the vendee is entitled to have the contract specifically enforced. The subject is also thoroughly discussed in the case of *Haden* v. *Falls*, 115 Va. 779, 80 S. E. 576, Ann. Cas. 1915C, 1034, where the converse of the proposition is held—that in the absence of any allegation of fraud, a court of equity will not, at the instance of the vendee, decree specific performance of a husband's contract to sell his land, in which his wife has a contingent right of dower which she refuses to release, where the purchaser demands an abatement of the purchase price, or an indemnity by reason of such refusal. It must be regarded as settled in Virginia that where, as in the case in judgment, the vendee is willing to pay the agreed price and to accept the deed without the wife's signature, the husband may be compelled to perform his contract and to convey what he has agreed to convey." See *Mooers* v. *Wilson*, 183 Va. 910, 919, 920, 33 S. E. 2d 791; 17 M. J., Specific Performance, § 59, p. 92.

In the recent case of *Hill* v. *Gulf Oil Corporation*, 200 Va. 287, 292, 105 S. E. 2d 625, Mr. Chief Justice Eggleston, speaking for the court, said:

"Next, it is argued that specific performance should not be required of the defendant, Jack Marvin Hill, because his wife had not signed the lease. But she is not a party to the suit and specific performance

is not asked against her. Her outstanding contingent dower interest is no obstacle to specific performance where, as here, the vendee lessee is willing to accept a deed from him without his wife's signature, and asks no abatement in the purchase price. * * *."

■ We are next concerned with the admissibility of testimony of Bradley and Dunn relating to the conversation between Bradley and Gilmore before the option-agreement was signed and which was objected to by the Commonwealth as varying, altering and changing the terms of a written agreement.

Nowhere in the option-agreement does the Commonwealth guarantee Bradley that it would construct or otherwise improve a part of Route 360 at any time. It provides: "It is *proposed* by the Commonwealth to construct or otherwise improve a part of State Highway Route 360, * * *." (Italics supplied.)

If the testimony of Bradley and Dunn is admitted, it tends not only to bind the Commonwealth to carry out the project, but to do the work within a specified time. The effect of this parol evidence is to add to, alter and contradict the terms of the unambiguous written contract. Their testimony does not fall within the exceptions to the parol evidence rule and is therefore not admissible.

In *Slaughter* v. *Smither*, 97 Va. 202, 204, 205, 33 S. E. 544, it is said:

"The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous. It is a principle founded in wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend, and its violation would be destructive of the most solemn transactions of life. * * *." For a discussion of the subject see "The Parol Evidence Rule in Virginia" by Dean Moreland, 3 W. & L. Law Rev. 185.

Having ruled that the questioned testimony of Bradley and Dunn was inadmissible, we find no valid reason why Bradley should not be required to specifically perform the option-agreement and convey what he has agreed to convey.

The decree appealed from is reversed and the cause is remanded for the entry of a decree in accordance with the prayer of the bill of complaint.

*Reversed and remanded.*