# Richmond

## CUSHMAN VIRGINIA CORPORATION, ET AL. v. DONALD C. BARNES.

March 4, 1963.

Record No. 5538.

Present, All the Justices.

The opinion states the case.

*John L. Abbot* and *F. D. G. Ribble* (*William H. Brown*, on brief), for the appellants.

*George D. Gibson* (*T. Justin Moore, Jr.; George C. Freeman, Jr.; Hunton, Williams, Gay, Powell and Gibson*, on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

Cushman Virginia Corporation, hereinafter referred to as Cushman, filed a bill of complaint against Donald C. Barnes, hereinafter referred to as Barnes, praying that an adjudication be made that there was appurtenant to the land of Cushman a right of way over the land of Barnes. The bill also prayed that Barnes be enjoined from interfering with Cushman's use of the right of way. The trustees and beneficiaries under deeds of trust on the Cushman land were also made parties complainant, but their presence as such is not of concern on this appeal.

Barnes filed an answer to the bill denying that Cushman had any right of way over his property. The answer further alleged that if

tracts of 1.77 acres and 1.9 acres. No mention was made in the deeds of the right of way through lots 1 and 2 of "Midway" other than the reference to the termination of the thirty foot right of way in "the center of the *Durrett* Road."

Barnes acquired his land, totalling approximately 335 acres, made up of portions of lots 1, 2 and 3 of "Midway," by two deeds. The first deed, in 1947, conveyed 234.9 acres, being the major portion of lot 2 and traversed by the Durrette road, and 12.4 acres, being a portion of lot 3 but not so traversed. The second deed, in 1952, conveyed 88.4 acres, being a portion of lot 1 and traversed by the road. Each of these conveyances was made subject to the right of way established in the Durrette partition.

Barnes was also conveyed a right of way over the lands of Farmington, Inc., which he has used for access to his property. When he purchased his portion of lot 2 he found a sign marked "No Passin" on the right of way at the property line between lots 1 and 2.

In 1929, the Watsons had acquired a new right of way from their property through the lands of Farmington, Inc., and they ceased using the Durrette road as a means of access. A fence was erected across the road between the Watson land and that now owned by Barnes, although sliding bars were installed to permit the passage of members of the Farmington Hunt Club. A portion of the road on lot 2, near the Watson property, became overgrown with trees and brush.

However, occasional use was made of the old road on Barnes' land after 1929 by horseback riders, by a farmer hauling corn from the Cushman land and by one person who drove an automobile over it. And Mr. and Mrs. Watson, in 1942, conveyed a tract of 1.96 acres to George H. Barkley with, "a right of way along the old right of way out to the old Ivy Road created" in the Durrette partition. In 1949, they conveyed to J. Deering Danielson a tract of 32.7 acres, together with a right of way over the old road.

The present controversy arose when Cushman advised Barnes of its intention to subdivide the 126.67 acre tract and to use the Durrette road in connection therewith.

At the hearing before the chancellor, there was no direct evidence of the width of the right of way or the scope of its use immediately after its establishment in 1895. There was testimony dating back to 1907 that the road served the three farms along its route to carry buggies, hay wagons, threshing machines, trucks and other farm equipment. One witness said that, "two people could pass most

everywhere on that road except when you got out there on the mountain some places." However, there was other testimony that there was only, "a one track road, you could pass if you were to drive out in the field;" that the road, "in narrow places would give a buggy about six inches on each side;" that the road was 8 or 10 feet wide, and that there were gates across the road in seven or more different places, each being 10 to 12 feet wide.

J. Harvey Bailey, a surveyor with extensive experience with farm property in Albemarle County, testified as to surveying and topographical data he had compiled relating to the Durrette road. Through him, a plat was introduced showing cross-sections of the right of way at more than twenty points over its entire course. He gave his opinion, based upon his experience and the evidence he had secured concerning the road, that its original width was 7 to 8 feet.

Numerous photographs were introduced showing the condition of the road immediately prior to the hearing. They depict the remains of what had been a narrow, winding farm lane.

 Cushman's assignments of error and Barnes' assignments of cross-error present several questions for our determination, the first of which is:

1. Did the chancellor err in finding that there was a right of way over Barnes' land appurtenant to the Cushman tract? (Paragraph A of the final decree.)

This question arises from Barnes' contention that the deed of the 123 acre tract from Watson to Cushman in 1943 did not convey a right of way over the Durrette road. He also argues that since the 30 foot right of way granted to Cushman terminated in "the center of the *Durrett* Road," there was an expressed intention not to convey any rights beyond that point.

We think there is no merit in Barnes' contention in this respect. Code, § 55-50 provides as follows:

"*Appurtenances, etc., included in deed of land.*—Every deed conveying land shall, unless an exception be made therein, be construed to include all buildings, privileges and appurtenances of every kind belonging to the lands therein embraced."

The right of way over lots 1 and 2, established in the partition proceedings for the benefit of lot 3 of "Midway," was an appurtenance belong to the latter lot, and to every portion thereof. When a portion of that lot was conveyed by the Watsons, it carried with it the use of the right of way, if accessible to it, unless an exception thereto was made in the deed. *Clark* v. *Reynolds*, 125 Va. 626, 634,

100 S. E. 468; *Norfolk & W. R. Co.* v. *Obenchain,* 107 Va. 596, 600, 59 S. E. 604; *Scott* v. *Moore,* 98 Va. 668, 675, 37 S. E. 342; *Linkenhoker* v. *Graybill,* 80 Va. 835, 839; 1 Minor on Real Property (2d ed.) § 89, pp. 123, 124; 17A Am. Jur., Easements, §§ 150, 151, pp. 754, 755.

■ No such exception, as provided by Code, § 55-50, was contained in the deed to Cushman. To the contrary, by providing an easement from the tract conveyed to the Durrette road, the parties evidenced their clear intention that the owner of the tract should have the right to use the road. No other reasonable purpose can be conceived for providing the connecting easement.

In this connection, Barnes contends that the chancellor erred in excluding the testimony of G. Norris Watson that he and his wife did not intend to give Cushman the right to use the Durrette road when they made the conveyance of the 123 acre tract. This was not error. Since the intention of the parties was clearly expressed in the deed itself, parol evidence was not admissible to explain or to vary its terms. *May* v. *Bradley,* 201 Va. 295, 302, 110 S. E. 2d 520; *Russell Co.* v. *Carroll,* 194 Va. 699, 703, 74 S. E. 2d 685.

The right of way over the Durrette road was, therefore, an appurtenance of the Cushman land. It passed with the land by operation of Code, § 55-50 and in furtherance of the expressed intention of the parties.

■ The next question is, did the court err in determining that the right of way, "does not exceed the width of the farm road existing in 1895, the travelled portion being limited to a single track, not exceeding 10 feet and the outside width, including cuts, fills, ditches, embankments, etc., at no point exceeding 15 feet?" (Paragraph B of the final decree.)

We think the chancellor did not err in this ruling.

In *Stephen Putney Co.* v. *R. F. & P. R. Co.,* 116 Va. 211, 217, 81 S. E. 93, we said:

"Where an easement has been granted or reserved by deed, the ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties must be ascertained from the words of the deed, and the extent of the easement cannot be determined from any other source. But where its language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in the light of the circumstances surrounding the parties and the land at the time the deed was executed."

And in *Good* v. *Petticrew*, 165 Va. 526, 533, 183 S. E. 217, it was said, "Where the width of a right of way is not specified in the grant, then it is limited to the width as it existed at the time of the grant."

Applying these principles to the case before us, we find that the deeds creating the right of way did not specify its location, which is not in dispute here, or its width. It was, therefore, necessary to ascertain what the parties intended the width to be, by relating the words of the deed, "by the present road," to the circumstances surrounding the parties and their land. This is what the chancellor did and, as a result, found the right of way to be of the width set forth in his decree. The crucial question is, was there credible evidence to support his ruling?

It is true that there was no direct testimony of what width was actually established for the right of way in 1895. There was, nonetheless, ample evidence to show that the right of way existed then as it existed later—as a single lane farm road.

Cushman contends that since the deeds were silent as to the width of the right of way, it will be presumed that the parties intended that 30 feet would be its width. The basis for this presumption, Cushman says, is the fact that at the time the right of way was established all public roads in Virginia were 30 feet wide.

The Durrette road is not, nor has it ever been, a public road. Even Cushman does not now urge that it be so declared.

The testimony of the witnesses who had been familiar with the road since 1907; the technical evidence and expert testimony of the surveyor, Bailey; the photographic exhibits which displayed facts to which time has given testimony, and which cannot be refuted, all lead to but one conclusion—the Durrette heirs never intended, and did not establish, the right of way to be 30 feet wide. Instead, this evidence, all of which was credible, supports the chancellor's determination of its width.

■ The next question is, did the chancellor err in determining, "that such right of way may not be used for the purpose of developing or serving the residential or commercial subdivision of the 126.67 acre tract and such right of way is accordingly limited to normal farm or residential use of not more than two single family dwellings together with any servant or tenant houses used solely for housing of the occupant employees of such dwellings located on any part of the 126.67 acre tract, regardless of the number of any

future off conveyances or subdivisions of the 126.67 acre tract?" (Paragraph C of the final decree).

We are of opinion that the chancellor did err in this respect. His ruling unreasonably restricts Cushman's rights in the use of the right of way.

When a right of way is granted over land, the servient estate, for the benefit of other land, the dominant estate, and the instrument creating the easement does not limit the use to be made thereof, it may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted. This rule is subject to the qualification that no use may be made of the right of way, different from that established at the time of its creation, which imposes an additional burden upon the servient estate. *Savings Bank* v. *Raphael*, 201 Va. 718, 723, 113 S. E. 2d 683; *Wagoner* v. *Coal Corporation*, 199 Va. 741, 744, 101 S. E. 2d 627; *Vance* v. *Davis*, 195 Va. 730, 737, 80 S. E. 2d 396; 1 Minor on Real Property (2d ed.) § 95, p. 126; 17A Am. Jur., Easements, § 119, p. 727; Anno. 130 A. L. R. 768.

And, as has been seen, the right to the use of the easement is an appurtenance of the dominant estate and of every portion thereof. When a portion of the dominant estate is conveyed away, without excepting the right of way, the owner of such portion has the right, in connection with the reasonable use of his land, to make use of the easement if his land is accessible thereto. The fact that the dominant estate is divided and a portion or portions conveyed away does not, in and of itself, mean that an additional burden is imposed upon the servient estate. The result may be that the degree of burden is increased, but that is not sufficient to deny use of the right of way to an owner of a portion so conveyed. *Linkenhoker* v. *Graybill, supra;* 1 Minor on Real Property (2d ed.) § 110, p. 149; Anno. 8 A.L.R. 1368.

In the case before us, the deeds creating the right of way contained no terms of limitation upon its use. Mary Durrette Watson, the owner of lot 3 of "Midway," provided she devoted her land to a reasonable purpose which did not impose an additional burden upon lots 1 and 2, was entitled to make such use of the right of way as its narrow width permitted. That same right, subject to the same conditions, passed to Cushman as an appurtenance of the 126.67 acre tract acquired from Mrs. Watson. The final decree improperly limits Cushman's rights. The decree must be modified, therefore,

by eliminating therefrom the provisions of paragraph C and the reference thereto in paragraph D.

In so holding, we do not make any determination of the effect of local zoning or subdivision control ordinances upon the use of the right of way by Cushman. That question is not before us on this appeal.

The next question presented is, did the chancellor err in his finding that the right of way had not been extinguished by abandonment? This question arises from one of Barnes' cross assignments of error.

To support Barnes' theory that the right of way had been abandoned, there was testimony that after the Watsons had acquired the new right of way through Farmington in 1929, they abandoned the right of way over the Durrette road, erected a fence across it and never used it thereafter; that a "No Passin" sign was erected on the right of way between lots 1 and 2 when Barnes purchased his land, and that the right of way was permitted to become overgrown with trees and bushes.

To support Cushman's theory that the right of way had not been abandoned, there was testimony that occasional use had been made of the road since 1929, and that after the Watsons were supposed to have abandoned the right of way they made conveyances of portions of their land in which they granted the right to use the easement.

Thus, there was presented to the chancellor conflicting evidence upon this issue. He has determined to accept that version of the evidence which supports the theory of no abandonment. That version was credible and persuasive and he was justified in accepting it. Under these circumstances, we will not disturb his ruling. *Flippo* v. *Broome*, 202 Va. 919, 921, 121 S. E. 2d 490; *Rogers* v. *Runyon*, 201 Va. 814, 816, 113 S. E. 2d 679.

The final question is, did the court err in refusing to award costs to Cushman? This question arises because in the final decree the chancellor directed that, "each party pay his or its own costs."

Cushman says it was error to make it pay any part of the costs in the court below. We do not agree.

Cushman sought by its bill the establishment of a 30 foot right of way, unlimited in use, across Barnes' land. Barnes took the position that no right of way existed. The chancellor found that the right of way did exist, contrary to Barnes' contention, but also

found that it was limited in width and use, contrary to Cushman's contention.

Thus, the position of neither party was substantially sustained. The awarding of costs was a matter of discretion with the chancellor. That discretion was not abused in this case. *Brown* v. *Coates*, 165 Va. 254, 258, 182 S. E. 554; *Wright* v. *Wright*, 164 Va. 245, 257, 178 S. E. 884.

For the reasons given, the decree will be modified to eliminate therefrom the provisions of paragraph C and the reference thereto in paragraph D. Except as so modified it will, in all other respects, be affirmed. Barnes, having substantially prevailed on this appeal, will be awarded his costs in this Court.

*Modified and affirmed.*