UNITED STATES of America,
Plaintiff,

v.

PARKWAY TOWERS, INC., Defendant.

Civ. A. No. 1188.

United States District Court
E. D. Virginia,
Newport News Division.

Feb. 21, 1968.

Alfred D. Swersky, Asst. U. S. Atty., Norfolk, Va., for plaintiff.

William L. Person, Jr., J. R. Zepkin, Williamsburg, Va., for defendant.

## MEMORANDUM

KELLAM, District Judge.

The United States filed this action for declaratory judgment to have the Court declare and determine the rights of the parties under a certain reservation of easement in a deed from A. W. Hitchens and wife to the United States dated February 16, 1935, and recorded in the Clerk's Office of the Circuit Court of York County, Virginia, in Deed Book 50, page 75. By said deed United States acquired a strip of land 500 feet wide extending through the lands of said Hitchens for use as the Colonial National Monument Parkway. The Parkway would ultimately lead from Yorktown, through Williamsburg to Jamestown. The conveyance of said 500 foot strip left the Hitchenses with property on each side of the proposed roadway. In said deed the Hitchenses reserved a perpetual easement or right of way for vehicular and foot travel, in the following language:

> It is understood and agreed, however, that the grantor, A. W. Hitchens, does expressly reserve unto himself, his heirs, assigns and successors in title, a perpetual easement or right of way, for vehicular and foot travel, of a width of thirty feet, over, through and across the above described parcel of land, which shall be located at a point to be mutually agreed upon between the parties hereto, having due regards for the purposes and uses of each party, and convenience of approach.

Upon a stipulation of the facts, the whole matter was submitted to the Court without a jury. It appears from the stipulation that defendant herein acquired the lands of the Hitchenses on the north side of the Colonial National Monument Parkway (Parkway), which is shown on Exhibit 4 attached to the stipulation, together with all of the Hitchens'

rights in said easement. Defendant does not own any property on the south side of said Parkway. It is further stipulated that an actual physical roadway existed at the site of the claimed easement at one time; that it was used for access from the Parkway as late as 1949, and it is not claimed the easement has been abandoned. It is further stipulated the use of the roadway was open and notorious, and that until April of 1966, no objection was made to the use of the easement.

It is admitted the United States has constructed a paved highway in the 500 foot strip which is used for vehicular travel. While it is not clear from the plat (Exhibit 4), the paved highway is located in the southern part of the 500 foot strip and about 275 feet from the southern line of defendant's property.

The United States contends that the easement was reserved for the sole purpose of permitting Hitchens access from his property on the north side of the strip (now defendant's property) to the Hitchens' property on the south side of the strip. It says that even after the Parkway (paved road) was constructed in the strip the easement only permitted the Hitchenses to cross the roadway, and they could not turn left or right and travel along said paved roadway. There is no evidence that access to or from said Parkway—that is, the paved roadway, which is open to travel by the public—is limited in any way. While the complaint alleges irreparable injury will result to the United States if defendant is not enjoined from exercising acts of dominion over the easement, there is no evidence of any injury, or what any future injury will be.

Defendant, on the other hand, says the easement is perpetual, is not limited as plaintiff contends, and is of great value to its property. It says the easement was intended to and does furnish it with ingress and egress to the Parkway.

■ We look first to the language in the instrument for a determination of the rights of the parties, and the extent of the easement cannot be deter-

mined from any other source. But, if the language is ambiguous, in order to ascertain the intention of the parties, the Court will look to the language in light of the circumstances surrounding the parties and the land at the time the easement is created. Cushman Virginia Corp. v. Barnes, 204 Va. 245, 129 S.E.2d 633 at 639; Hamlin v. Pandapas, 197 Va. 659, 90 S.E.2d 829, 833. The language in the easement is clear. It reserved to Hitchens, his heirs, assigns and successors in title, a perpetual easement or right of way, for vehicular and foot travel, over, through and across the 500 foot strip. The exact location of the easement was not designated, but it was to be located at an agreeable point, having "regard for the purposes and uses of each party, and convenience of approach." The language refers to "purposes and uses" which indicates more than one purpose or use. There are no restrictions, except for "vehicular and foot travel." Nothing in the instrument says the easement is solely for access from one parcel to the other, or that it ceases if and when access can be had from one parcel to the other by some other means, or that the United States can or may limit the use (other than as expressed by the language creating the easement), or that it will cease if and when Hitchens sells the property on the north or south side of the 500 foot strip. If such had been the intention of the parties, it would have been easy for them to so state in simple language.

Where an easement is granted (or reserved) it may be used for any purpose to which the property for whose benefit the easement exists may then, or in the future, reasonably be devoted, unless the grant or reservation specifically limits the use; [1] that is, the holder of the easement is entitled to do what is reasonably necessary to enjoy the full rights established by the easement.[2] The right of use was for every portion of the lands of Hitchens, not just for the lands on the north side or on the south side.[3] When Hitchens (or his successor) conveyed away the property on the south side, there was nothing in the easement which said the easement ceased or determined, nor was there anything in the easement which said it was only for access between the parcels. The location of the land and the Parkway make the use of the easement highly advantageous to defendant's lands, whether used in connection with operation of business or otherwise.[4] Nothing in the language reserving the easement limited Hitchens or his successors to the use they could make of the property. This is not the case where an easement was reserved or created for a particular purpose and which would expire when the purpose ceased to exist.[5] In Hudson v. American Oil and American Oil Co. v. Leaman,[5] an easement from property of Hudson and Leaman to a designated public road ceased to exist when the public road was abandoned, since the easement then became a "dead end." [6]

1. Cushman Virginia Corp. v. Barnes, 204 Va. 245, 129 S.E.2d 633, 639; Wagoner v. Jack's Creek Coal Corporation, 199 Va. 741, 101 S.E.2d 627, 629.

2. Pitsenbarger v. Northern, etc., 198 F. Supp. 665 (D.C.Iowa 1961); Williams v. Northern, etc., 136 F.Supp. 514 (D.C. Iowa 1956).

3. Cushman Virginia Corp. v. Barnes, 204 Va. 245, 129 S.E.2d 633, 640.

4. Kogod v. Cogito, 91 U.S.App.D.C. 284, 200 F.2d 743 (1952). In Jennings v. Lineberry, 180 Va. 44, 21 S.E.2d 769, 770, it is said that while one cannot have an easement in his own land, if he uses

part of his property to establish a roadway an easement may be created if there be a severance of the tracts and the roadway be apparent, continuous and necessary to the enjoyment of the dominant tract.

5. Kogod v. Cogito, 91 U.S.App.D.C. 284, 200 F.2d 743 (1952); American Oil Co. v. Leaman, 199 Va. 637, 101 S.E.2d 540, 552; Hudson v. American Oil Co., 152 F.Supp. 757, 764. affirmed 4 Cir., 253 F.2d 27.

6. In each of those cases the property of Hudson, et als, and Leaman fronted on a paved public road.

United States agrees that if the paved Parkway had been constructed along the southern line of defendant's property, they would have access to the Parkway to travel along the highway. Hence, it is not a question of the right of defendant to use the paved roadway.

■ Arguendo, let us suppose the property of Hitchens on the south side of the Parkway had been sold and used as a shopping center, and the property of defendant was ready for use for residential development. Quick access to the shopping center would likely increase the value of defendant's property, if the easement could be used for such purpose. United States says the easement cannot now be used to cross or enter the paved roadway, and when originally established only permitted a crossing of the strip and did not permit the users to turn either right or left on the paved roadway. The fact that the easement may not be used for that purpose, or for any similar purpose, does not destroy the right of user. An existing right of way is not forfeited by nonuse [7] (except in some cases of easements by necessity).

It was stated to the Court that at the time of establishing the easement, Route 168 (shown on the plat, Ex. 4) was not in existence, and that defendant does not now have access to or use of the streets shown on said plat as 6th Street and 7th Street, because there is a narrow strip of land owned by another situated between defendant's land and the streets, and in addition, while said streets were platted at the time of establishing the easement, they have never been opened.

■■ Since the language of the easement is clear; a roadway in fact existed in the easement and was used for access from the Parkway; and until 1966—31 years after its establishment—"no objection was made concerning the use of this claimed easement", I am of the opinion the right to use the easement for ingress and egress to and from the paved Parkway to defendant's property still exists. The United States has not declared the Parkway a limited access road, or restricted vehicles entering this public Parkway. No one questions the right of the United States to create the Parkway as a limited access highway, by proper proceedings, but it cannot do so arbitrarily. It may not limit defendant's right to enter the Parkway, and not limit others similarly situated. However, the issue before the Court is not the right of the United States to limit access to the public roadway (Parkway) but whether the right reserved unto Hitchens, his heirs and assigns by the language of the easement has ceased or expired. It has not.

---

7. Lindsey v. Clark, 193 Va. 522, 69 S.E.2d 342; Norfolk & W. Ry. v. Obenshain, 107 Va. 596, 59 S.E. 604; Rudolph v. Glendale Improvement Co., 103 W.Va. 81, 137 S.E. 349; Penn Bowling, etc. v. Hot Shoppes, 86 U.S.App.D.C. 58, 179 F.2d 64, 16 A.L.R.2d 602 and Anno. at page 609.