## CIRCUIT COURT OF CAROLINE COUNTY

Waldo T. Starkweather
and Mary E. Starkweather

v.

Welford M. Bullock, Jr., et al.

October 6, 1993

Case No. CH90–104

BY JUDGE WILLIAM H. LEDBETTER, JR.

This dispute involves a right of way, more specifically, its location, its width, and the extent to which owners of the servient estate can obstruct passage along it.

### Facts

The background of this case has been detailed in a previous opinion, [24 Va. Cir. 306] (July 15, 1991), and in the commissioner's report filed on June 4, 1993.

In a nutshell, the Starkweathers purchased a 50-acre tract from Thompkins and others in 1965. To gain access to Route 603, a public road, they negotiated with Welford Bullock, the owner of land between the Thompkins tract and Route 603. By instrument dated February 22, 1965, Bullock granted to the Starkweathers "an easement of ingress and egress from the state highway to the Thompkins tract over the old logging road or over any other accessible route selected by [Bullock], through and across the property of [Bullock]." The instrument was recorded at the same time the Thompkins-to-Starkweather deed to the 50-acre tract was recorded. By various conveyances, the Ericksons acquired the Bullock property.

In this suit, the Starkweathers claim that the Ericksons have interfered with their use of the right of way. They ask the court to enjoin

such interference and, further, to award damages for past hindrances. They also ask for a declaration of the location and width of the right of way, and they ask the court to determine the respective rights of the parties concerning the right of way. The court addressed several preliminary issues in an opinion letter dated July 15, 1991. Some original defendants were dismissed and a claim for monetary damages for breach of a "right of first option," also contained in the easement instrument, was severed from this suit and transferred to the law side of the court. The issues regarding the right of way were referred to a commissioner in chancery who conducted an evidentiary hearing and filed a report. On September 16, 1993, the court heard arguments on exceptions to the report. This opinion letter addresses those matters.

### Nature of the Easement

From the evidence, three things about the nature of the easement are clear.

First, the easement was created by *express grant*. The easement agreement dated February 22, 1965, later recorded among the land records, controls the nature and terms of the easement. The easement did not arise by necessity, by estoppel, by implication, by prescription, or by any other mode recognized by law. Thus, legal principles associated with express grants of easement, not those other forms of easements, apply here.

Second, the right of way is *appurtenant*, not in gross. It is appurtenant to the 50-acre tract acquired from Thompkins by the Starkweathers in 1965. It is an "incorporeal hereditament" that runs with that land for the benefit of that land. Conversely, the right of way burdens or encumbers the Ericksons' land and runs with it. The Starkweathers' property is the "dominant estate"; the Ericksons' property is the "servient estate."

Third, the *purpose* of the easement is obvious. It is a right of way for ingress and egress for the Starkweathers' 50-acre tract across the Ericksons' property to Route 603.

Although the parties do not appear to dispute these three fundamentals and there is no credible evidence to the contrary, it is useful to set them down because the principles that apply to them determine the outcome of this controversy.

*Use of the Right of Way*

The instrument creating the easement governs the use of the easement. Ordinarily, unless the grant provides otherwise, a person who has an easement in another's land must be allowed to enjoy it in such a manner as will secure him all the advantages contemplated by the easement, and it is incumbent upon the owner of the servient estate to refrain from interfering with the enjoyment of the easement.

Here, the grant establishes an easement of ingress and egress. Any activity of the Ericksons that unreasonably hinders, obstructs, or interferes with that usage is improper.

The evidence shows that on a number of occasions, the Ericksons have stopped persons hired by the Starkweathers to clear the right of way. However, these incidents involved merely brief delays and were for the sole purpose of ascertaining the identity and intentions of the persons operating the equipment. Without question, such temporary delays, when done in good faith, do not constitute unreasonable interference with use of the right of way.

On one occasion, the Ericksons erected a rather flimsy barrier. The purpose, they say, was to prevent trespassers from traversing the land, not to obstruct the Starkweathers' passage. This incident occurred more than 10 years ago. After an exchange of letters, the barrier was removed.

Over the years, the Ericksons have leased their fields for farming. A portion of the right of way crosses some of the fields. According to the evidence, the tenant farmer has planted crops in the right of way. He says that it is impractical to turn his planting equipment away from the right of way or to lift it as it crosses the right of way. The Starkweathers regularly mow that portion of the crop that grows in the right of way, without objection. Nevertheless, the Starkweathers see this as a form of interference. The Ericksons argue that the crops are no greater an obstruction than weeds that are allowed to grow in the right of way.

Although the commissioner saw no reason why the crops, other than corn (last planted more than six years ago), should be considered an unreasonable interference, the court disagrees. Despite the inconvenience that the location of the easement may cause the farmer, the Ericksons cannot permit a deliberate disruption of the Starkweathers' free passage along the right of way. For that reason, the court will declare that the Ericksons shall not plant crops or suffer crops to be planted in the right of way; or, if seeds are sown in the right of way,

the vegetation must be promptly destroyed or levelled before it reaches a height that in any way would obstruct, hinder, or disturb vehicular passage.

With respect to the 1983 incident involving a barrier across the right of way, the Ericksons contend that they have the right to erect and maintain a gate across the right of way. They refer to Virginia Code § 33.1–202. That statute permits the owner of a servient estate to erect and maintain a gate across a right of way *at points at which fences extend to such right of way on each side*. There is no evidence here that the Ericksons' property is fenced on each side of the right of way. For that reason, the commissioner found the statute inapplicable. The court agrees. When and if the Ericksons enclose their fields with fences, the statute may have application. Otherwise, it does not. The court declines the invitation to adjudicate a question that may, under different circumstances than now exist, arise in the future.

### Location of the Right of Way

Bullock granted the Starkweathers a right of way "over the old logging road." That road is described in the instrument as "an old logging road across the realty owned by [Bullock] which has been used in the past as a route for ingress and egress to [the 50-acre tract acquired from Thompkins by the Starkweathers] . . . ." Although the commissioner did not take a view of the property, it is apparent from the evidence that everyone is familiar with the location of "the old logging road." In fact, its location is not disputed. The Starkweathers used that route as the right of way for several years before the location was moved.

The location of the right of way — at least a portion of it — has been changed twice since it was created 28 years ago.

A right of way can be relocated by the consent of the persons interested in it. Such consent may be implied from the acts and acquiescence of the parties. *See, Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741 (1958); 6B M.J., *Easements*, § 22.1.

Further, the location of a right of way may be changed if expressly provided in the instrument that created it. Here, the instrument specifically provides that the right of way is located over the old logging road, discussed above, *"or over any other accessible route selected by [Bullock] through and across the property of [Bullock]."*

In fact, Mr. Starkweather's testimony belies the complaint made in his pleadings about the changes of location. Before the commissioner, he testified (p. 80) that the road has been relocated on two occasions without objection and that he has never doubted that the owners of the servient estate could relocate it. Further, the Starkweathers have used and maintained the right of way at its present location, without objection, for many years. Therefore, the court is of the opinion that there is really no dispute about the location of the right of way. Its proper location is at its present situs.

As noted above, the instrument creating the easement expressly gave Bullock the right to change its location. At the hearing on exceptions, the Starkweathers' counsel argued that the provision in the instrument allowing relocation of the easement was (1) personal to Bullock, and (2) was intended to be a one-time change. Nothing in the language of the instrument or in the subsequent conduct of the parties supports such a proposition. As we have seen, the easement is appurtenant and runs with the land. Mr. Starkweather acknowledged in his testimony that he has always understood that the location could be changed; and it was, in fact, changed on two occasions, most recently by the Ericksons, with the acquiescence of the Starkweathers.

Accordingly, the court agrees with the commissioner that the right of way may be relocated by the owners of the servient estate as long as the new route is accessible and determined in good faith.

### Width of the Right of Way

Actually, the focus of this litigation is the width of the right of way. The Starkweathers want the court to declare that they have an easement 50 feet wide, or that the width may vary according to the needs for residential development on the Starkweathers' tract as required by the County and the Virginia Department of Transportation. The location and dimensions of an easement created by express grant are defined by and limited to the provisions of the grant. *Watts v. Johnson*, 105 Va. 519 (1906). Where no width is expressed in the instrument creating the easement. the determination of width is made by reference to the intention of the parties to the grant, as determined by the circumstances existing at the time and affecting the property. *Waskey v. Lewis*, 224 Va. 206 (1982). When, however, the instrument refers to and grants a right of way over an already existing road, the right of

way is limited to the width of the road as it existed at the time of the grant. *Cushman Corp. v. Barnes*, 204 Va. 245 (1963).

Here, the right of way was granted over an existing road, the "old logging road." Therefore, according to the principles explained above, the width of the easement is the width of the road at the time the easement was created. The commissioner found from the evidence that the old logging road had a width of 16 feet. The Starkweathers assert that there is no factual basis for the commissioner's finding. They argue that the testimony of one witness, the original grantor's son, is merely a "guess" and is contrary to the maps and drawings in evidence. The court agrees with the commissioner. There is sufficient evidence to support the commissioner's conclusion that the old logging road is 16 feet wide. Terry Bullock's "guess" was not a guess in the sense of conjecture or speculation. Viewing his testimony as a whole, his figure was an "estimate" based on personal knowledge through many years' contact with the road. Other evidence supports the commissioner's finding, and the court cannot say that it is plainly wrong or not supported by the record.

The fact that the location of the right of way has been changed does not affect its width. At its present location, the roadway is approximately 16 feet wide. The testimony of witnesses, really without serious contradiction, supports that conclusion. Because the parties established a new location with a width practically identical to the width of the old right of way adds strength to the factual finding that the proper width of the right of way is 16 feet.

### Injunctive Relief

Although injunctive relief is available in easement disputes, whether to grant an injunction is within the discretion of the court. Where obstructions or interferences have been minimal, no irreparable harm has been caused or is threatened, and the court is of the opinion that such relief is unnecessary to prevent further interference, it is not an abuse of discretion to deny an injunction.

Such is the case here. The court simply will declare that the Ericksons shall not plant crops or suffer crops to be planted in the right of way; or, in the alternative, shall destroy or level any growing crops promptly after the crop begins to grow and before it reaches a height that would obstruct, hinder or disturb vehicular passage. The court will

further declare that Virginia Code § 33.1–202 does not apply to the facts of this case for the reason expressed in the opinion.

### Damages

Although the Starkweathers sought damages, they proved none. Their claim of damaged vehicles resulting from crops growing in the right of way was not proven, only recited. Their claim for damages resulting from mental anguish and distress are without merit for the reasons noted by the commissioner. Their claims for reimbursement of expenses related to this litigation, and for attorney fees, are likewise without merit for the reasons explained by the commissioner.

Therefore, the court approves the commissioner's findings that the Starkweathers are entitled to no damages.

### Costs

The commissioner's fee is approved, and costs will be assessed against the Starkweathers as recommended by the commissioner.