## CIRCUIT COURT OF CAROLINE COUNTY

Virginia Joyce Vaughan Wilkerson et al.

v.

Cleveland B. Holloway, Jr.

### Case No. CH95-0050

BY JUDGE WILLIAM H. LEDBETTER, JR.

### June 23, 1997

In this easement case, the plaintiffs claim a way of necessity across land owned by the defendant. Further, they contend that language in a 1928 deed gives them an express right of way for hauling timber across the defendant's property. The defendants deny both claims.

### *Facts*

This controversy involves parcels of land that prior to 1928 were part of a common tract exceeding 1,000 acres. The property is located on the south side of Route 17 (Tidewater Trail) near Port Royal.

William T. Powers and Rosie P. Holloway, co-owners, partitioned the tract in 1928 by dividing it into five parcels. According to a plat recorded with the partition deed, parcels 1, 2, and 3 abut Route 17. They are adjacent to one another and are numbered east-to-west. Parcel 4 is located behind (i.e., to the south of) parcel 2 and parcel 3. Thus, parcel 4 has no direct access to Route 17. Parcel 5 lies to the rear of parcel 4. It also abuts the rear tip of parcel 3. Parcel 5 has no direct access to Route 17.

In the partition deed, parcels 1, 3, and 5 were conveyed to Powers; parcels 2 and 4 were conveyed to Holloway. The instrument also contained language regarding timber and crops on the property, and gave Powers the right to remove timber from parcel 5 across Holloway's parcels 2 and 4.

Holloway died in 1969, devising parcel 4 to Powers and parcel 2 to her sister, Fannie Powers Holloway.

Shortly thereafter, Powers died leaving parcels 1, 3, and 5 to his son, William D. Powers, and parcel 4 to William D. Powers and Margaret P. Vaughan in equal shares.

In 1970, Fannie Powers Holloway died leaving parcel 2 to her son, C. B. Holloway.

In 1975, William D. Powers, then the owner of parcels 1, 3, and 5, and a half interest in parcel 4, conveyed the front portion (i.e., the portion abutting Route 17) of parcel 3 to James E. and Edith Kate Gouldman. In that deed, he reserved a 24-foot wide right of way from Route 17 to other lands owned by him for purpose of ingress and egress.

Margaret P. Vaughan died in 1985 leaving her one-half interest in parcel 4 to the plaintiffs.

C. B. Holloway left parcel 2 to his son, the defendant, upon his death in 1988.

William D. Powers died in 1993. He devised parcels 1, 5, and the remainder of 3 to one of the plaintiffs, Virginia Joyce Vaughan Wilkerson, and his one-half interest in parcel 4 to both plaintiffs.

Therefore, by these various conveyances and devises, the plaintiffs are the owners of parcels 1, 4, 5, and the remainder of parcel 3, and the defendant is the owner of parcel 2.

One other transaction is mentioned in this dispute. In 1946, William T. Powers acquired a 24-foot wide easement from the owners of adjoining property lying to the west of parcel 3. The instrument described that easement as a right of way running from Route 17 along the top of a ridge to the "present cattle pen of William T. Powers." The exact location of this easement is not known, although it would seem to run approximately parallel to the western line of parcel 3.

### Nature of the Case

In their bill of complaint, the plaintiffs seek a determination that they are entitled to (1) an "easement by implication" resulting from the division of parcel 2 and parcel 4 for the benefit of parcel 4, and (2) an express easement

for the benefit of parcel 5 by virtue of the language in the 1928 partition deed. The defendant filed an answer denying the existence of either easement.

The case was referred to a commissioner in chancery who conducted an evidentiary hearing. Before the commissioner had completed her report, the plaintiffs asked the commissioner to conduct another hearing for the purpose of receiving additional evidence. When the commissioner responded favorably to the request, the defendant objected. After an ore tenus hearing, the court allowed the parties to present additional evidence, limited in scope, to the commissioner. Thereafter, the commissioner conducted a supplemental evidentiary hearing and filed her report on January 30, 1997. She concluded that the plaintiffs had failed to establish an access easement across the defendant's property for the benefit of parcel 4. She construed the 1928 partition deed as giving the plaintiffs the right to remove timber from parcel 5 across the defendant's property, but she declined to determine the location of the right of way for reasons stated in the report.

Both parties filed exceptions to the report. The exceptions were argued on April 21, 1997, and the court took the matter under advisement.

## Easement by Implication

As noted above, the plaintiffs' bill asserts an "easement by implication" across the defendant's parcel 2 for the benefit of the plaintiffs' parcel 4. In the latter stages of this litigation, however, the plaintiffs have focused on a claim of easement of necessity. In response to the defendant's argument that the claim of an easement of necessity is improperly beyond the scope of the pleadings, the plaintiffs contend that an easement of necessity is a species of easements by implication.

When easements are divided into the two broadest categories, (1) express easements and (2) all other easements, the plaintiffs' contention is obviously correct. Traditionally, though, legal authorities have categorized easements with more particularity, so that implied easements and easements of necessity are treated separately for clarity of analysis.[1] Nevertheless, the outcome of this dispute should not hinge upon whether the plaintiffs have used the proper degree of precision in identifying the type of easement they claim. Their evidence and arguments clearly focus on a way of necessity.

For purpose of this analysis, the court considers easements by implication as synonymous with easements by implied grant, or quasi-easements. Where

---

[1] See *Fones v. Fagan*, 214 Va. 87 (1973): "While the two theories are similar and both require a showing of necessity, they are analytically distinct."

an owner has so arranged his land that one part derives from another a benefit or advantage that is obvious, continuous, and reasonably necessary and he sells one of the parts, it is implied (unless provided otherwise, of course) that the benefit or advantage continues as before the separation of title. See 6B M.J., *Easements*, § 10; see also *Gravatt v. Ames*. Caroline County Cir. Ct. # CH89-00049 (1990).

A person cannot have an easement in his own land, but he may use one part for the benefit of another part. This will not create an easement so long as the two parts remain in the same hands; hence, the reference to "quasi-easements." Upon severance of the parts, there is an implied grant or reservation of all those continuous and apparent "quasi-easements" that had been used by the owner during unity and that are reasonably necessary for the enjoyment of one of the parts. It is said that the use, in order to pass or to be retained by implication, must be open, visible, apparent, and continuous. *Sanderlin v. Baxter*, 76 Va. 299 (1882); *Fones v. Fagan*, 214 Va. 87 (1973); *Haynie v. Brenner*, 216 Va. 722 (1976).

Severance of ownership of parcel 2 and parcel 4 occurred in 1969 upon the death of Rosie P. Holloway, when she devised parcel 4 to William T. Powers, the plaintiffs' predecessor-in-title, and parcel 2 to Fannie Powers Holloway, the defendant's predecessor-in-title. She had acquired both parcels in the 1928 partition.

There is no evidence that at the time of severance parcel 2 was used for the benefit or advantage of parcel 4 in an open, visible, and continuous manner. References in the testimony and other evidence (e.g., plaintiffs' exhibit # 8) to "traces" or "scars" of an old woods road across portions of parcel 2 onto the edge of parcel 3 and then onto parcel 4 are insufficient to prove the existence of a "quasi-easement" that would ripen into an implied easement upon severance of the ownership of the two parcels. Therefore, the will of Rosie P. Holloway did not create an implied easement in favor of parcel 4 across parcel 2 to Route 17.

As noted above, the plaintiffs now seem to concede this point and focus on a way of necessity.

### Easement of Necessity

To establish an easement of necessity, three conditions must be shown. First, the dominant tenement and the servient tenement must have been under

common ownership at some time and this unity must have been severed. Second, the severance must have given rise to the need for the right of way. Third, reasonable need for the easement must be proven by clear and convincing evidence. *Middleton v. Johnston*, 221 Va. 797 (1981); *Fones v. Fagan, supra.*

There is no dispute about the unity of ownership and severance. Until 1969, parcels 2 (the servient estate) and 4 (the dominant estate) were under common ownership. Then, ownership was severed by the will of Rosie P. Holloway. Therefore, the first condition is met.

Did the severance give rise to the need for the easement? This question addresses the crux of the dispute.

The plaintiffs contend that when parcel 4 was severed from parcel 2, "parcel 4's access to a public right of way was cut off and a reasonable need arose for some outlet ... for the beneficial use of the property." Thus, they say, "all the essential elements for the establishment of a way of necessity, under the circumstances of this case, are present unless another reasonable means of access from [parcel 4] to a public right of way existed or continues to exist in fact and law which does not require the [plaintiffs] to cross the [defendant's] property." The plaintiffs go on to argue that their evidence establishes that no other practicable access exists.

On the other hand, the defendant points to other means of access that were available to the owner of parcel 4 at the time of severance. First, the owner of parcel 4 also owned parcel 3. Thus, access was available from parcel 4 across parcel 3 to Route 17. Second, the 24-foot wide right of way acquired in 1946 existed, although its exact location and its rear terminus are uncertain. Third, uncontradicted testimony established the existence of a passable road from parcel 4 running in an easterly direction along the rear of parcels 2 and 1, along their boundaries with A.P. Hill Military Reservation, to Route 301. One witness said that this road was the "primary access" to parcels 4 and 5 from the 1950's until 1983 or 1984.

This aspect of easements by necessity was addressed in *American Small Investment Co. v. Frenzel*, 238 Va. 453 (1989). There, the Court said:

A right of way by necessity is based on the theory that when a grantor conveys property he does so in a manner which will allow beneficial use of both the property he conveys as well as the property he retains ... . It is essential to this theory that the necessity arise simultaneously with the conveyance. If the conveyance does not preclude the beneficial use of either the property conveyed or the property retained, an implied grant or reservation is unnecessary.

The severance in this case resulted from a devise, not a conveyance. Nevertheless, the principle stated in *Frenzel* is applicable. The will of Rosie P. Holloway did not give rise to an easement of necessity from parcel 4 across parcel 2 to Route 17 because such an easement was not necessary. The devise did not landlock parcel 4. The devisee of parcel 4 owned the adjoining parcel 3, which gave him access to Route 17. He also had access to Route 301 along the back road.

The plaintiffs argue that their access from parcel 4 to Route 17 across parcel 3 is hampered by Goldenvale Creek, which meanders across the rear of parcel 3, and by lowlands and that their access to Route 301 is now blocked.

As noted above, the *severance* must have given rise to the need for a right of way. Therefore, occurrences since 1969 that may adversely affect parcel 4's accessibility are irrelevant. If this were not so, land titles would be in a chaotic state. If this were not so, two parcels could be severed from common ownership and if one of the parcels became landlocked *at any time* therefore, the owner of the landlocked parcel could demand a way of necessity across the parcel from which his parcel was severed, regardless of the status of ownership and development of that other parcel.

There is no evidence about the condition of the terrain at the rear of parcel 3 as it existed in 1969. The court cannot assume that the conditions prevailing today are the same as three decades ago.

The plaintiffs correctly point out that reasonable necessity, not absolute physical necessity, satisfies the third condition. *Jennings v. Lineberry*, 180 Va. 44 (1942); *Hartsock v. Powell*, 199 Va. 320 (1957). Nevertheless, the court is of the opinion that the evidence fails to prove clearly and convincingly that a reasonable necessity existed in 1969 for access across parcel 2 to Route 17 for the benefit of parcel 4.

If another means of access exists, though less convenient or more expensive to develop, no way of necessity arises. *Jennings v. Lineberry, supra; Fones v. Fagan, supra.* Here, other means of access existed in 1969, and the plaintiffs have failed to establish that those other ways were so unreasonable or impracticable as to give rise to a way of necessity across parcel 2.

### Timber Removal Easement for Parcel 5

The plaintiffs also own parcel 5, situated directly to the rear of parcels 4 and 3. As mentioned, they contend that the 1928 partition deed gives them an express easement across parcel 2 for the removal of timber from parcel 5. The

defendant argues that by its terms the partition deed only gave William T. Powers a personal license to remove a particular crop of timber and should not be construed to create an easement in perpetuity.

In the partition deed, William T. Powers acquired parcels 1, 3, and 5, and Rosie P. Holloway acquired parcels 2 and 4. After reciting that Powers' portion would be parcels 1, 3, and 5, the deed provides: "with a right of way or way of ingress and egress to and from [parcel] 5 through [parcel] 2 and [parcel] 4 to the Tidewater Trail [Route 17] for the purpose of removing merchantable timber from [parcel] 5, and [Powers] shall pay to [Holloway] the sum of Five Hundred Dollars ... ."

The provision concerning timber does not stop here. In convoluted fashion, it continues:

> that the growing and standing timber and wood on the entire tract of land shall not be partitioned hereby but that the timber on the entire tract of land will be sold at some future date and proceeds divided between said [Powers] and [Holloway] and that a sale of the sawable timber or all of the timber on the entire tract of land shall operate as a quitclaim and release of all the right, title, and interest of [Holloway] in any remaining timber and wood on [parcels 1, 3 and 5] and shall operate as a quitclaim and release of all the rights, title and interest of [Powers] in any timber and wood remaining on [parcels 2 and 4] ... reserving to [Holloway] her one-half undivided right, title and interest in and to the standing and growing timber and wood thereon ... do grant and convey to and unto [Powers] all of their right, title and interest in and to [parcels 1, 3, and 5] as shown on the plat together with a right of way or way of ingress and egress through [parcels 2 and 4] to the Tidewater Trail [Route 17] for the purpose of removing merchantable timber from [parcel 5]. And the said [Powers] ... for and in consideration of the premises, reserving to [Powers] his one-half undivided right, title, and interest in and to the standing and growing wood and timber ... and further reserving to himself, [Powers], heirs, grantees, and assigns, a convenient right of way or way of ingress and egress through [parcels 2 and 4] from [parcel 5] to the Tidewater Trail [Route 17] for the purpose or [sic] removing merchantable timber from [parcel 5], do grant and convey to and unto the said [Holloway] all of her [sic] right, title, and interest in and to [parcels 2 and 4] as shown on said plat.

From the language of the partition deed, it is clear that Powers and Holloway intended to maintain their common ownership of *existing* "merchantable timber" on the entire tract despite the division of the tract into five parts. The *existing* "merchantable" or "sawable" timber, along with "present crops growing," on the entire tract would be sold "at some future date" and the proceeds would be equally divided. Then, as to "any *remaining* timber and wood," it would belong to the party that owned the parcel on which it stood. In granting Powers a way of ingress and egress to Route 17 for the purpose of removing timber from parcel 5, Holloway could not have intended to limit that access to the one-time removal of *existing* merchantable and sawable timber, in which she was to share equally, thereafter blocking Powers' ingress and egress with respect to removal of "any remaining timber and wood" from parcel 5. Such a narrow interpretation would defy common sense, would ignore the relationship of the parties and the overall objectives they sought to accomplish, and would render meaningless the reference to "any remaining timber and wood" and the phrase "[Powers], heirs, grantees, and assigns" in the provision.

Accordingly, the court agrees with the commissioner that the 1928 partition deed granted Powers an express easement of ingress and egress, in perpetuity, to remove timber and wood from parcel 5 across parcel 2 to Route 17.[3]

### Location of Timber Removal Easement

The plaintiffs have an easement of ingress and egress across parcel 2 to Route 17 for the purpose of removing timber and wood from parcel 5. The partition deed does not define or describe the easement nor does it delineate its location. Reference is made to a "convenient right of way."

As for the location of the way, it is clear from the evidence that a "convenient way" exists along the old woods road shown on plaintiffs' exhibit # 8. Because the traces of that old road meander briefly onto a segment of parcel 3, the segment that was conveyed to the Gouldmans by the plaintiffs' predecessor in 1975, and because the Gouldmans are not parties to this suit, the commissioner determined that location of the easement could not be established.

---

[3] The fact that the partition deed granted the plaintiffs' predecessor-in-title an easement across parcel 4 as well as parcel 2 is immaterial to this litigation since the plaintiffs own both parcels 4 and 5.

The court rejects that conclusion. The easement is a "convenient right of way." The old woods road, as shown on plaintiffs' exhibit # 8, is extant and usable and satisfies the grant. Where the road goes onto parcel 3 (between points L41 and L43 on plaintiffs' exhibit # 8), only a distance of several feet, the road will be straightened so that all of it is on parcel 2, the servient estate. This is accomplished by diverting the road at point L40 so that it runs northeast to L43 rather than onto parcel 3. With this minor adjustment, the right of way expressly created in the partition deed follows the old woods road from parcel 5, across parcel 4, directly onto parcel 2 near the point where parcels 2, 3, and 4 intersect, then across parcel 2 along the old woods road to Route 17. The court needs no additional evidence or expert testimony to make such a trivial adjustment.

As for the width of the right of way, none is given. It is settled that where no width is expressed in the instrument creating the right of way, the width is determined by reference to the intention of the parties. If the object of the right of way is expressed, then the dimensions are such as to reasonably suffice for the accomplishment of that objective. *Waskey v. Lewis*, 224 Va. 206 (1982). Here, the object of the easement is stated: the removal of timber and wood. Therefore, the width of the easement is such as will accommodate a vehicle removing timber or wood and, by necessary implication, the machinery that must have ingress to parcel 5 to fell the trees and cut the timber.

### Conclusion

For the reasons stated, the court is of the opinion that there is no easement of way across parcel 2 for the benefit of parcel 4.

Further, for the reasons stated, the court is of the opinion that the owners of parcel 5 have an express easement for ingress and egress across parcel 2 to Route 17, along the existing old woods road, with a minor adjustment in location to keep the road within the boundaries of parcel 2. The right of way is not a general access easement. It is for the benefit of parcel 5 and solely for the purpose of removing timber and wood, as expressed in the instrument.

### Fees and Costs

The commissioner's fee is approved, and the fee is assessed equally and payable within thirty days. The costs have been paid. Those costs and attorney's fees will be borne by the respective parties.

September 15, 1997

The owner of property encumbered by a right of way which this court found to exist in an earlier stage of this case now asks the court to establish the width of the easement.

## Background

By opinion dated June 23, 1997, this court held that Wilkerson, the owner of parcel 5, has an easement of ingress and egress across parcel 2, owned by Holloway, to Route 17 for the purpose of removing timber and wood from parcel 5. The original of this easement is the 1928 partition deed between the parties' predecessors-in-title, the language of which is quoted at length in that opinion.

The partition deed did not define or describe the easement nor delineate its location. Based on the language used in the partition deed and the evidence presented, the court located the easement along the old woods road shown on plaintiffs' exhibit # 8.

As for the dimensions of the easement, the partition deed gave none. Therefore, based on the evidence, the court concluded that "the width of the easement is such as will accommodate a vehicle removing timber or wood and, by necessary implication, the machinery that must have ingress to parcel 5 to fell the trees and cut the timber."

Holloway, the owner of the servient estate, contends that the court can (and should) establish the exact width of the easement by reference to the evidence in the record regarding the width of the old woods road. He contends that the trace of that road is 10 to 12 feet wide as it traverses portions of parcel 2. Wilkerson, the owner of the dominant estate, disagrees. That matter was argued on September 2, 1997, and taken under advisement.

## Decision

The dimensions of an easement created by express grant are defined by the provisions of the grant. The ordinary rule which governs in the construction of other writings prevails, namely, that the rights of the parties are ascertained from the words of the deed and not from any other source. If the language is ambiguous, the court in order to ascertain the intention of the parties looks to the language employed in light of the circumstances surrounding the parties and the land at the time the deed was executed. *Hamlin v. Pandapas*, 197 Va. 659 (1956).

Although the above-stated principle is the starting point in determining the width of an express easement, it has no direct application to this case because there are *no* provisions in the 1928 partition deed that address the dimensions of the right of way.

Where no dimensions are expressed in the instrument creating the right of way, the determination of width is made by reference to the intention of the parties as determined by the circumstances existing at the time and affecting the property. If the object of the right of way is expressed, the intention of the parties can be provided by inference that the width is such as is reasonably sufficient for the accomplishment of that object. *Hamlin, supra; Waskey v. Lewis*, 224 Va. 206 (1982).

When, however, an instrument refers to and grants a right of way over an already existing road, the width of the right of way is defined by the dimensions of the road as it existed at the time of the grant. *Cushman Corp. v. Barnes*, 204 Va. 245 (1963); see also *Starkweather v. Bullock*, 32 Va. Cir. 120 (1993).

Here, the grant of easement is "a convenient right of way ... of ingress and egress ... for the purpose of removing merchantable timber ... ."

From this language, it is obvious that, first, no dimensions are expressed in the instrument creating the right of way, and, second, the object of the right of way is expressed. Hence, as this court held in its original opinion, the width of the right of way is such as will accomplish that object, namely, the removal of timber from parcel 5 across parcel 2 to Route 17.

There is no evidence in the record from which the court can properly determine the precise width that would be appropriate for the removal of timber from parcel 5.

Holloway's reliance upon the existing width of the old woods road is misplaced.

First, the width of a right of way is defined by the dimensions of the road as it existed at the time of the grant *only* where (1) no dimensions are expressed in the instrument and (2) the instrument refers to and grants a right of way along an already existing road. The 1928 partition deed did not refer to or grant a right of way along or over an already existing road. No mention was made of an existing road. On the contrary, the deed provided for "a convenient right of way ... ." It bears repeating that the *court* located the right of way along the old woods road (with one minor adjustment) because that location is a "convenient way," *not* because the *deed* located the right of way along that road. Therefore, *Cushman, supra,* and *Starkweather, supra,* are inapposite.

Second, the evidence does not establish the width of the old woods road in 1928. At best, the evidence indicates that some portions of the road have had a width of 10 to 12 feet for many years. That evidence would be insufficient to enable the court to determine the width of the right of way even if the principles explained in *Cushman* were applicable here.

## Conclusion

Without further evidence, the court cannot establish the exact width of Wilkinson's "convenient right of way of ingress and egress ... for the purpose of removing merchantable timber ... ."

Accordingly, the findings set forth in the court's opinion letter of June 23, 1997, should be memorialized in an order. That order will constitute a final decree unless the parties decide to take further evidence for the purpose of establishing the exact width of the right of way, in which case the order should reflect that fact, and the parties should proceed to take such further evidence by deposition.